527 So.2d 234 (1988)
James P. ROSEBOOM, Appellant,
v.
H.T. CONSTRUCTORS, INC., and Maryland Casualty Company, and H.B.S.A. and American International Adjustment Company, Appellees.
No. BS-231.
District Court of Appeal of Florida, First District.
May 25, 1988.
*235 Richard I. Cervelli, Naples, for appellant.
Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, P.A., Fort Myers, for appellees, H.T. Constructors, Inc. and Maryland Cas. Co.
Elizabeth A. Pooley of Mitcham, Weed, Barbas, Allen & Morgan, Tampa, for appellees, H.B.S.A. and American Intern. Adjustment Co.
PER CURIAM.
Claimant appeals from an order denying his claim for temporary total disability benefits, physician bills and continuing medical care. We reverse.
The claimant testified that in August of 1985, while working for appellee H.B.S.A. as a carpenter on a construction site, he fell while carrying a piece of construction equipment. The light valance he was carrying weighed between two hundred and three hundred pounds and landed *236 across his hip, pinning him. The accident was not immediately reported because the claimant did not feel at the time that he had suffered any serious injury. But the accident was witnessed by another employee and by claimant's foreman, who lifted the valance off of him. Approximately ten days later, appellant began to experience pain in the groin and hip area, which persisted from then on, although he was still able to work.
On June 9, 1986, while employed with appellee H.T. Constructors, the claimant slipped and fell on his right side at work and immediately experienced severe pain in his right hip area. He has not worked since this accident, which was promptly reported. Dr. Onkey, an orthopedic surgeon who examined the claimant after this accident, diagnosed appellant's problem as a collapsed femoral head produced by a long-standing condition of avascular necrosis. The doctor testified that appellant is in need of a total hip replacement, that the avascular necrosis itself was not "produced" by either accident, and that if one assumes the truth of appellant's testimony (i.e. the occurrence of the first fall and the onset of symptoms thereafter) the first accident aggravated the condition and the second accident "could have" aggravated it.
We conclude that we must reverse the order dismissing the claims arising out of the accidents on August 5, 1985 (employer H.B.S.A.), and June 9, 1986 (employer H.T.), because the record before us supports only the conclusion that both accidents contributed causally to some degree, by way of aggravation or acceleration, to claimant's temporary disability and medical needs. Apportionment issues, other than division between carriers, appear to be premature absent any determination of a permanent disability claim. See section 440.15(5)(a), Florida Statutes.
The consolidated claims were for medical care and temporary total disability benefits from June 9, 1986, to the date of hearing on February 9, 1987. Both carriers asserted that claimant's need for medical care and his disability from avascular necrosis were not "caused, aggravated or accelerated" by the successive accidents, and, as to employer H.B.S.A., that there was a lack of timely notice of the 1985 accident.
The order found in material part that: The claimant .. . has worked throughout his life as a carpenter and general construction worker.
In August of 1985, while working for the first employer, he was carrying a light fixture when he tripped and twisted. He suffered a puncture injury to his knee and had complaints of pain in the leg and hip. This was not reported to the employer, although a foreman saw him fall and helped him up... . Some week to ten days after this fall, the claimant testifies he had pain in the groin and hip which persisted... .
Shortly thereafter the Claimant left this job and was unemployed for the next five to six months. He and some relatives were doing substantial repairs on his family home. In March of 1986, he returned to work; this time for the Barry Company. In June of 1986, he slipped [at work] and fell on his right side... . The claimant has a long standing condition of avascular necrosis in the hip. The femoral head has collapsed and the claimant presents himself at the hearing on crutches. He is in need of a total hip replacement... .
I accept Dr. Onkey's opinion that [1] the 1986 fall was not the competent and producing cause of the claimant's ailment.

With respect to the 1985 accident, [2] there is no medical evidence to support a conclusion that this fall, if it occurred, caused the claimant any injury. Furthermore, I find that [3] the failure to report it was prejudicial to the interests of the employer/carrier and that the claimant obviously had an ongoing disease process which was untreated after the first alleged injury. (e.s.)
Although the deputy's conclusion numbered [1] in the quote above (that the 1986 accident did not produce claimant's "ailment") is supported by evidence that the *237 avascular necrosis disease process antedated both accidents, that conclusion does not address the issue before the deputy as to whether that accident contributed causally to the temporary total medical disability which immediately followed that fall. There is no evidence that the preexisting avascular necrosis caused the 1986 fall  instead the order, supra, in substance accepts the testimony that claimant worked regularly for several months before June 9 when he slipped on sawdust, fell on his right side, and was thereafter unable to stand without great pain.
A full reading of the medical testimony shows (1) the treating physician's reluctance in his deposition to accept even hypothetically the symptomatic history supplied by claimant (who had, immediately after the second accident, withheld from the doctor information as to the 1985 trauma); (2) a consequent effort by this medical witness to phrase his opinions on aggravation in the subjunctive ("could" have aggravated); (3) his eventual response as to the 1985 accident, "Seems safe to say that that aggravated it. That it accelerated the need for the operation"; and (4) as to contribution by the 1986 fall, it could have "aggravated it the same way that the previous injury did." In this context the qualifying "could" is most reasonably regarded as merely conditioning the aggravation or acceleration opinion on the assumed truth of claimant's symptomatic and work history. Nowhere in his testimony does the doctor negate his medical report of June 19, 1986, that "the symptoms were brought on by his injury," consistent with a diagnosis of a "sprain of the right hip secondary to a fall and secondary [to] avascular necrosis of the right hip." Absent any evidence which would support factual findings different from the doctor's assumptions, this record requires a conclusion of some causal contribution by the 1986 accident to the ensuing temporary disability and need for medical care, and a remand for specific findings in that respect.
As to the 1985 accident, conclusions numbered [2] and [3] in the order quoted above are similarly defective. The order initially finds that in August 1985 claimant fell at work and "suffered a puncture injury to his knee and ... pain in the leg and hip." It concludes somewhat inconsistently that there is no medical evidence to support a "conclusion that this fall, if it occurred, caused ... any injury." (e.s.) Again the material question is whether the 1985 accident and injury causally contributed to the temporary disability after June 9, 1986.
This carrier contends on appeal that the medical aggravation opinion detailed above (unqualified with respect to the 1985 accident) should be disregarded because the deputy implicitly rejected the assumptions on which it is based: that the fall occurred and that symptoms appeared for the first time thereafter. The deputy, however, expressly found that the fall occurred, and he had before him no evidence whatever of any symptomatic history inconsistent with the doctor's assumptions. Whatever might be his unexpressed view on claimant's credibility, the medical opinion above, based on extensive examination and diagnostics as well as the only evidence presented on symptomatic history, compels a reversal of the "no medical evidence" conclusion and a remand for specific findings on aggravation or acceleration and for application of pertinent statutory provisions to the benefits claimed.
The deputy's finding of lack of notice as to the 1985 accident is also not sustainable in light of the uncontroverted evidence in this record that the accident occurred in the presence of claimant's foreman. In Winter Park Memorial Hospital v. Brown, 452 So.2d 116 (Fla. 1st DCA 1984), the claimant, a salad maker, failed to make out a formal accident report because she did not believe that she had sustained any serious injury. Her employer did not receive official notice of her accident until approximately a year after the accident. This court held that inasmuch as the head salad maker, who directed the claimant's activities and whom the claimant regarded as her supervisor and/or boss, had witnessed the fall, this was sufficient notice to the employer. See also Collier v. Ranch House Restaurants, Inc., 381 So.2d 270, 271 (Fla. 1st DCA), pet. for rev. denied, *238 389 So.2d 1114 (Fla. 1980) (and cases cited therein for the principle that notice to a supervisor or foreman is adequate notice to the employer).[1]
We reverse and remand for entry of a new order on this record or such further proceedings as may be necessary for a current disposition of the claim.
REVERSED AND REMANDED.
WENTWORTH and ZEHMER, JJ., concur.
NIMMONS, J., concurs in part and dissents in part, with written opinion.
NIMMONS, Judge, concurring in part and dissenting in part.
I concur with the majority except for that portion of the majority's opinion holding that the evidence supported only the conclusion that the June 9, 1986 accident contributed causally, by way of aggravation or acceleration, to claimant's temporary disability and medical needs. I would therefore affirm that portion of the order denying benefits related to the 1986 fall.
NOTES
[1] We note that an H.B.S.A. representative testified that appellant informed him of the August 1985 accident the following January but he made out no report because it was company policy not to take an accident report if the accident was more than twenty-four hours old. In view of the Act's provisions that notice is to be given within thirty days of the accident and that failure to give notice within such time period can be excused for a satisfactory reason, § 440.185(1), Fla. Stat. (1985), such policy invites problems.