WENTWORTH, Judge.
The appellant Conrad seeks review of a worker’s compensation order which denied his claim for medical care and temporary disability compensation from May 28,1986, to the date of hearing on March 27, 1987. Although the finding that the accident caused no aggravation of claimant’s preexisting condition appears to be inconsistent with evidence of his work history and treatment at the time of the accident, we affirm *1062 because the record contains medical evidence which permits the deputy’s denial of benefits based on his view that claimant’s present disability is not causally related to the 1985 accident.
The parties agree that claimant, age 31, had a preexisting condition of his left hip which was diagnosed as avascular or aseptic necrosis after he reported a fall on a tree stump in the course of employment as a surveyor on May 2, 1985. He had been treated during the preceding month for what he described as back pain. He attempted light work briefly after the accident but has since then been temporarily disabled, receiving medical care from numerous physicians who ultimately recommended a total surgical hip replacement. Further temporary disability compensation and medical care, including the recommended surgery, was controverted approximately a year following the accident.
At the hearing in March 1987 the appel-lee employer/carrier stated: “We’re admitting an accident but the condition that is rendering Mr. Conrad disabled and requiring this medical treatment has turned out to be avascular necrosis, which we contend is not related to the accident.” The order refers only to “the alleged accident” and the employer/carrier argue here, in conflict with their stipulation below, that claimant “created a story about a fall at work.” Our disposition of the appeal is obviously impeded by such inconsistencies and by the lack of any reference in the order to the lengthy period for which compensation was paid or to the evidence, if any, of the date when the compensable injury, if any, was resolved.[1] The order, however, explicitly determines that the claim for benefits as of May 28,1986, “is not causally related to or connected with an accident ... or with the claimant’s employment,” based upon testimony of Drs. Onkey and Fuller. That testimony reflects opinions that any attempt to determine whether the accident worsened claimant’s condition “would be pure speculation,” “all arbitrary and ... guess work.” The deputy accepted Dr. Onkey’s unequivocal conclusion that an X-ray taken in May, 1986, showed the head of claimant’s femur was already dead, and that the trauma could only have caused a temporary aggravation by pain or irritation of the joint capsule.[2]
Appellant argues persuasively that the abundance of conflicting testimony as to probable acceleration by the accident, including the opinion of the primary treating physician, should have been accepted over the opinion of Dr. Onkey which was based on review of records and a single examination. Error is also urged in the deputy’s lack of explicit identification of the basis for his choice. But the deputy did indicate his reasons by repeated reference to credibility issues, as follows:
On deposition, the claimant testified under oath that he did not have pain in his left hip prior to May 2,1985. He specifically denied at that time that he told two of the physicians who had treated him following the alleged accident that he had suffered from left hip pain dating back to December of 1984. At the hearing before me on March 27, 1987, the claimant testified that, before May 2, 1985, the only symptoms that he experienced were pain in the lower back and pain down through the buttocks....
Dr. Floyd L. White, a chiropractor, ... testified that he treated the claimant weekly during the month of April, 1985, immediately preceding the month of the alleged accident. The medical records of Dr. White were also admitted into evidence during the hearing, revealing that the claimant had given Dr. White a history of left hip pain since December of 1984, that history having been given in *1063 April of 1985. Further, Dr. White testified that he performed a hip joint test on the claimant, which was positive. This test consisted of a maneuver which would put pressure on the head on the femur as it fits into the acetabulum. According to Dr. White, that test was positive for hip pain and did, in fact, produce hip pain.
Dr. Richard M. Dunlop testified ... that he first saw the claimant on May 6,1985, and obtained a history of pain in the low back since December of 1984. ... the claimant mentioned nothing at that time about an accident having occurred on May 2, 1985, four days earlier. Dr. White testified that, at some point after May 6, 1985, (the specific date of which he was uncertain) the claimant returned and asked him to note in the record that the pain had started on May 2, 1985. The doctor refused to change the earlier history recorded in his record, but did add the fact that the claimant had given him a subsequent history.
The depositions of Drs. Dusseau and Bonnette which were taken post-hearing revealed that the claimant saw both of these physicians after May 2, 1985, at which time he gave them both a history of low back and left hip pain, dating back to December of 1984, although he did give both of those physicians a history of the accident that allegedly occurred on May 2, 1985. Dr. Dusseau recorded a history from the claimant that he had suffered from persistent left hip and left thigh pain, radiating down to the knee and sometimes down the leg, since December of 1984.
The medical evidence that was introduced into evidence at the hearing indicates that the first X-ray of the pelvis and hip taken after May 2, 1985, was May 6, 1985, when the claimant was X-rayed by Dr. Jimenez in Cape Coral. A review of the medical testimony introduced into evidence at the hearing by deposition suggests that there is a difference of opinion among the physicians as to exactly what that X-ray showed. All of the physicians who testified about that particular X-ray indicated that it did show evidence of avascular or aseptic necrosis. The difference of opinion related to the severity and longevity of the condition.
On this issue, I accept the testimony of Drs. Donn Fuller and Richard Onkey, who both agreed that the changes shown on the X-ray taken by Dr. Jimenez on May 6, 1985, revealed an advanced state of avascular necrosis. I further choose to accept the testimony of Dr. Onkey that the X-ray in question showed a collapse of the femoral head on the left side, and that, at the time the X-ray was taken, the head of the femur was dead and that there was nothing medically that could be done to revive it. Further, I accept the testimony of Dr. Onkey that avascular necrosis can, in some cases, present itself with symptoms of pain in the buttock, the groin, the thigh, and the knee. Further, I accept the testimony of Dr. Onkey that, in some cases, a person with avascular necrosis may even start having some low back pain because the hip stiffens.
[[Image here]]
The evidence submitted by the claimant through the claimant’s mother and through the witness, Diane Luksch, conflict[s] with the medical records of the claimant’s condition prior to May 2,1985, and do[es] not bear specifically on the issue of the causal connection between the claimant’s avascular necrosis and the alleged accident of May 2, 1985. Additionally, in view of the persistent refusal of the claimant to admit that he suffered from and was treated for left hip pain prior to May 2, 1985, when compared with the medical records of four physicians, in which a history was given to the contrary, I find the claimant’s testimony unworthy of belief with respect to his medical history, both prior to and subsequent to the alleged accident of May 2, 1985, which was unwitnessed. For those reasons, I disbelieve the claimant’s version of his injury and accident on the job.
Based upon all of the testimony and evidence presented, I find that the claim *1064 ant’s avascular necrosis is not causally related to or connected with an accident, as alleged, or with the claimant’s employment with Engineering International, Inc.
In the context of the record supporting these findings, we do not find the order to be fatally deficient. Cf. Roseboom v. H.T. Constructors, Inc., 527 So.2d 234 (Fla. 1st DCA 1988).
AFFIRMED.
ZEHMER and BARFIELD, JJ., concur.

. The briefs do not reference the mandate of Section 440.15(5)(a), Florida Statutes, against apportionment of temporary compensation and medical benefits for the apparent reason that absence of any present causal contribution by acceleration of aggravation from the accident moots such considerations.

. We note that even this testimony does not equate with the order’s finding in absolute terms that the "avascular necrosis was not ... aggravated or accelerated” by the accident. Such language, however, is not essential to denial of the claim for lack of present causal contribution.