566 So.2d 311 (1990)
Elizabeth CALDWELL, Appellant,
v.
HALIFAX CONVALESCENT CENTER and United Self Insured Services, Appellees.
No. 89-2383.
District Court of Appeal of Florida, First District.
August 9, 1990.
Rehearing Denied September 19, 1990.
*312 Michael B. Wingo of Simmermon, Morgan & Wingo, Daytona Beach, for appellant.
Dwight Chamberlin of Monaco, Smith, Hood & Perkins, Daytona Beach, for appellees.
JOANOS, Judge.
Elizabeth Caldwell has appealed an order of the judge of compensation claims denying her claim for temporary total disability benefits, and orthopedic and psychiatric care. We reverse.
Caldwell suffered a compensable injury to her neck and back in April 1987 while working for the employer as a nurse's aide. In August 1987, she saw an orthopedic surgeon, Dr. Seltzer, whose examination revealed no abnormalities; the results of various objective tests were also normal. Seltzer last saw Caldwell in October 1987, at which time he opined that she had reached maximum medical improvement (MMI) "from an orthopedic standpoint with no evidence of impairment." Caldwell saw a second orthopedist, Dr. Stose, on one occasion in January 1988. He concurred that she had reached MMI with "no permanent anatomical impairment," and added that "no psychiatric treatment was necessary from an orthopedic point of view."
Based on Caldwell's continued complaints of headache pain, Dr. Seltzer referred her to Dr. Rotstein, a neurologist/psychiatrist. She saw Rotstein on November 13, 1987, at which time he diagnosed a "profound depression." Rotstein opined within a reasonable medical probability that "this lady's in bad need of psychiatric care." While testifying that such care had been indicated prior to the industrial injury (Caldwell's parental rights to two of her five children had been severed some years prior to the accident), Rotstein opined that the industrial accident had aggravated her prior emotional problems.
The employer/carrier ceased all payment of benefits in January 1988. Caldwell thereafter sought temporary total disability benefits from November 1987 to the date of the hearing and the authorization of further orthopedic and psychiatric care. At the subsequent hearing, along with the testimony of Drs. Seltzer, Stose and Rotstein, the judge considered the deposition of Dr. Silverman, a psychiatrist whom Caldwell saw once in January 1989.
Based on her review of Caldwell's medical records and an hour-long examination, *313 Silverman diagnosed a "major depressive disorder." She related the depression to the industrial accident within a reasonable degree of medical probability, stating that "I think that she got depressed from the accident and not being able to work." Silverman also noted that, despite suffering emotional problems prior to the accident, Caldwell's ability to work was not impaired prior thereto. When asked if Caldwell was disabled from working at the time she saw her in January 1989, Silverman answered in the affirmative, attributing the disability to "a combination of her physical disability and depression."
The judge thereafter entered an order denying Caldwell's claim in its entirety. With regard to the claim for TTD benefits and further orthopedic care, the judge cited the opinions of Drs. Seltzer and Stose that Caldwell had reached MMI in October 1987 without permanent impairment or restriction. As to the claim for psychiatric care, the judge found that there was no need for such treatment as a result of the accident. She noted that Caldwell had suffered from a turbulent personal life prior to the accident, and found that Dr. Rotstein did not relate her depression to that accident. The judge apparently rejected Dr. Silverman's opinion, noting the brevity of her January 1989 examination.
Caldwell alleges first that the judge erred in finding no evidence that her psychiatric condition was related to the industrial accident. We agree. While the record is clear that Caldwell suffered emotional problems prior to the accident, aggravation of a psychiatric condition may be compensable if it is the direct and proximate result of the accident. Deneault v. Alachua County School Board, 555 So.2d 909, 914 (Fla. 1st DCA 1990). Drs. Rotstein and Silverman both opined that the accident herein had aggravated Caldwell's pre-existing emotional condition.
The employer/carrier argues that these opinions are not competent evidence of a causal connection because they were not framed in terms of "reasonable medical probability." However, a review of the transcripts indicates that both doctors expressed their opinions in response to questions framed in terms of such probability. We also note that "it is not necessary for a physician to utter the magic words `reasonable medical probability' to support a finding of causal relationship if [the] evidence provides competent, substantial evidence of a causal relationship." Daytona Linen Service v. Davis, 454 So.2d 46, 48 (Fla. 1st DCA 1984).
Further, this evidence of causal relationship was uncontradicted. While Dr. Stose, an orthopedist, opined that there was no need for psychiatric care, he framed that opinion in terms of Caldwell's orthopedic condition. We also note that an orthopedist's opinion as to the need for psychiatric care is not competent substantial evidence on the issue. Norrell Corp. v. Carle, 509 So.2d 1377, 1379 (Fla. 1st DCA 1987). Therefore, because the only evidence before the judge indicated that Caldwell's pre-existing psychiatric condition had been aggravated by the industrial accident, her finding of no causal relationship between the accident and that condition is unsupported by competent substantial evidence, and must be reversed. See McCandless v. M.M. Parrish Construction, 449 So.2d 830, 834 (Fla. 1st DCA 1984); Desmond v. Medic Ayers Nursing Home, 492 So.2d 427, 429 (Fla. 1st DCA 1986).
Caldwell next alleges that the judge erred in denying her claims for remedial orthopedic and psychiatric care. We affirm the denial of remedial orthopedic care, in that the uncontroverted evidence showed that claimant reached orthopedic MMI in October 1987. However, as to Caldwell's psychiatric condition, the testimony established a causal relationship between that condition and the accident, and there was no evidence that Caldwell had reached psychiatric MMI at the time of the hearing. An employee who has not reached psychiatric MMI is entitled to an award of remedial psychiatric treatment, Copeland Steel v. Miles, 536 So.2d 1179, 1181 (Fla. 1st DCA 1989), and Caldwell's need for such treatment was uncontradicted. The denial of remedial psychiatric care is therefore reversed.
*314 Finally, Caldwell alleges that the judge erred in denying her claim for temporary total disability benefits. The judge based her ruling on findings that Caldwell was orthopedically MMI without permanent impairment, that her psychiatric condition was not causally related to her accident, and that there was no medical evidence of disability. However, uncontroverted evidence showed that Caldwell was suffering a causally related psychiatric condition, and there was no showing that MMI had been reached for that condition.
As to the absence of medical evidence of disability, Dr. Silverman testified that, in January 1989, Caldwell could not work based on a combination of her physical condition and depression. Despite the fact that Caldwell was at that time orthopedically MMI without impairment or restriction, the question remains as to the disability attributable to her psychiatric condition. We therefore reverse the denial of temporary total disability benefits, and remand for reconsideration of the claim based solely on Caldwell's psychiatric condition. The judge may receive further evidence on this issue should it be necessary to the resolution thereof.
Reversed and remanded with directions.
SHIVERS, C.J., and MINER, J., concur.