SMITH, Judge.
The employer and carrier (E/C) appeal a workers’ compensation order, contending that the deputy commissioner erred in finding claimant’s mental condition causally related to her compensable industrial accident. The E/C also assert error in the deputy’s finding of maximum medical improvement, the award of temporary partial disability, and the award of wage loss benefits; and the E/C further challenge the award of costs, medical costs, and interest on unpaid benefits. We conclude that the deputy commissioner was in error with respect to the award of wage loss benefits, since the deputy’s finding of a permanent impairment causally related to the industrial accident is contrary to the uncontrovert-ed medical evidence. It was also error to order future psychiatric care at the expense of the E/C. No reversible error is shown with respect to the remaining issues.
The forty seven year-old claimant was employed by U.S. Fire Insurance, the employer, when she suffered a hernia while carrying boxes at work on October 1, 1985. She continued working for 21 days, following which she was admitted to the hospital for surgery. After recuperation for four and one-half weeks she was released to return to work on November 25, 1985, with light-duty restrictions. The hernia was accepted as compensable, and TTD benefits were paid to November 25, 1985. None of the costs associated with the hernia are contested in this appeal.
When the claimant returned to work she was still in pain, and she was emotionally upset, depressed, and crying. She also began to experience friction with her supervisors, due, at least in part, to their failure to recognize and to make allowances for the light-duty restrictions given claimant by Dr. Szollosy, her treating physician. She continued to have headaches, crying spells and depression; and because of her emotional condition and problems at work, she discontinued her employment with the employer on July 17, 1987. The claimant thereafter accepted a job in telemarketing, which she described as less stressful and demanding.
Early in 1986, her treating physician, Dr. Szollosy, referred the claimant to Dr. Bal-lantine, a psychiatrist, because of the claimant’s continued complaints of pain without objective findings. Dr. Ballantine, who first saw the claimant on February 27, 1986, diagnosed her condition as a situational adjustment reaction with depressive symptoms. He began treating her, and continued treating her for much the same symptoms — sleeplessness, headaches, depression and crying — up through the date *379 of his testimony by deposition shortly before the hearing below.
Turning to the issues on appeal, we first determine, contrary to the E/C’s contentions, that competent substantial evidence supports the deputy’s finding of a mental or psychiatric condition occurring as a direct and immediate result of the claimant’s industrial accident. See Racz v. Chennault, Inc., 418 So.2d 413, 415 (Fla. 1st DCA 1982) (where there has been a physical accident and a claimant’s disability is increased or prolonged by traumatic neurosis or conversion hysteria, the claimant’s full disability, including the effects of the neurosis, is compensable).
Although Dr. Ballantine concluded during his later treatment of claimant that she had a preexisting “personality disorder” to which he attributed some of her difficulties, the record establishes, as found by the deputy commissioner, that the claimant had not previously suffered any of the disabling emotional problems or conditions observed by Dr. Ballantine prior to her accident and the resulting surgery; and further, she had not been previously treated for any mental condition. It is noteworthy that the claimant’s supervisors testified that claimant exhibited no emotional or mental instability until after her accident.
Although Dr. Ballantine’s testimony appears at various points to be self-contradictory, it is sufficient to establish that in the doctor’s opinion, with reasonable medical certainty, the claimant’s hernia operation and its aftermath, although not the sole cause, was the catalyst that brought on the claimant’s disabling symptoms. The medical evidence is complicated, unfortunately, by the doctor’s testimony concerning the onset of a second episode of emotional or psychiatric difficulties which he attributed, at least in part, to her preexisting personality disorder, unconnected with the accident. The doctor’s testimony, nevertheless, viewed in its entirety and in conjunction with all the other evidence, supports the conclusion that the hernia and the surgery were the catalysts or aggravating factors that brought on the conditions for which he found it necessary to treat her from the time of her initial visit.
We find no error in the deputy commissioner’s finding that her psychiatric condition was compensable. See Deneault v. Alachua County School Board, 555 So.2d 909, 914 (although there may be some evidence disclosing a psychological disorder existing prior to the industrial accident, nevertheless, aggravation of a psychiatric condition may be compensable if it is the direct and proximate result of the industrial accident); and Caldwell v. Halifax Convalescent Center, 566 So.2d 311 (Fla. 1st DCA 1990) (aggravation of a psychiatric condition may be compensable if it is the direct and proximate result of the accident).
It further appears, as found by the deputy — again not without inconsistencies in the doctor’s testimony — that the claimant reached MMI with respect to her mental condition on January 9, 1988. We find no error in the deputy commissioner’s finding of MMI as of that date.
With respect to the finding of permanent impairment, however, we cannot reconcile the deputy commissioner’s finding on this point with the contrary, unequivocal testimony of Dr. Ballantine that the claimant had no permanent impairment' attributable to her accident.[1] The deputy’s order attempts to support his finding of permanent impairment by reference to Chapter XIII of the AMA guides dealing with evaluation of permanent impairment from mental illness, and the testimony of the claimant in regard to the continuing nature of her mental condition and how it affects her on a daily basis. The order also cites and relies upon Jackson v. Publix Supermarkets, Inc., 520 So.2d 50, 51 (Fla. 1st DCA 1988), for the proposition that the imposition of medical restrictions, which are, in context, “attributable to the industrial injury and not temporary in nature, is inconsistent with the absence of any permanent impairment ...” (emphasis supplied). We find the deputy’s, and the *380 E/Cs’, reliance upon Jackson to be misplaced; first, the record here does not support a finding of the imposition of medical restrictions attributable to the industrial injury. It is clear from Dr. Ballantine’s testimony that whatever effect the accident had upon claimant’s post-injury mental condition, by the time she reached MMI from the psychiatric condition, the accident was of no causal effect in producing her mental or emotional state. Secondly, the decision in Jackson was a reversal of a deputy commissioner’s finding of no permanent impairment, not an adjudication of permanent impairment, a fact made clear by footnote 1 in the Jackson opinion, stating that claimant is “not precluded” from attempting to establish the existence of a permanent impairment in the future.
As this court reiterated in Fountain Motor Co. v. Zibrin, 526 So.2d 182 (Fla. 1st DCA 1988), the establishment of a permanent impairment rating is error in the absence of medical testimony or any other competent substantial evidence. Here, as previously noted, Dr. Ballantine found no permanent impairment related to claimant’s hernia. In addition, he also found no permanent psychological impairment from any cause. The mere mention by Dr. Bal-lantine of the fact that claimant should avoid stressful situations, and learn to “take one day at the time,” falls short of establishing the existence of a permanent psychological condition.
By the same token, Dr. Ballantine’s observations that the claimant “could benefit” from further psychiatric care is not evidence of a permanent impairment. Neither does this observation justify the award of future psychiatric treatment, since there was no testimony of “need” for such care; and, more importantly, there was no testimony that there was a need for psychiatric care for any condition related to claimant’s industrial accident.
In summary, we reverse the award of wage loss benefits and future psychiatric care, but affirm as to all other issues raised by appellants.
AFFIRMED in part and REVERSED in part.
SHIVERS, C.J., and WIGGINTON, J., concur.

. Dr. Ballantine testified: "Within a reasonable degree of medical certainty, I don’t see any permanent impairment as a result of the hernia.”