BARFIELD, Judge.
Appellant challenges the final order of a hearing officer from the Department of Administrative Hearings (DOAH) which ruled that the imposition of a Coastal Construction Control Line (CCCL) on appellant’s land was valid. At issue are the jurisdiction of the Department of Natural Resources (DNR) to impose the CCCL on the subject property, and the methodology used to determine the location of the CCCL. We affirm on both issues.
Appellant’s property lies along the coast of Gulf County, between St. Joe Beach and Palm Point, just across from St. Joseph Point. The CCCL line was originally established in 1974, about halfway between the shore and U.S. Highway 98. In 1985, pursuant to a mandate from the legislature, a new study was made and the CCCL was moved east of the highway. Court action followed, documented in St. Joe Paper Co. v. Department of Natural Resources, 507 So.2d 717 (Fla. 1st DCA 1987), and St. Joe Paper Co. v. Department of Natural Resources, 536 So.2d 1119 (Fla. 1st DCA 1988).
In August 1989, appellant filed a petition with DOAH, seeking a determination that Rule 16B-26.016, Florida Administrative Code, which established the CCCL across its lands, constitutes an invalid exercise of delegated legislative authority, on the grounds that DNR does not have jurisdiction over the lands at issue because they “front on” St. Joseph’s Bay, not the Gulf of Mexico, and that the establishment of the CCCL was procedurally improper. At the hearing in September 1990, testimony was taken from representatives of St. Joe Paper Company and DNR; Dr. Chiu (a Ph.D. coastal engineer and the director of the FSU Beaches and Shores Research Center, who wrote the “Gulf County CCCL Study”); Dr. Wang (an associate engineer at the Center, who supervised the computer work); Dr. Hiñe (a University of South Florida research coastal geologist); and John Michel (appellant’s expert, a registered engineer). Both parties filed proposed final orders.
The hearing officer found, inter alia (footnotes omitted):
The Department of Natural Resources has been directed by the Florida Legislature to establish coastal construction control lines (CCCL) along the sand beaches of the state fronting on the Atlantic Ocean, the Gulf of Mexico, or the Straits of Florida. The lines are established so as to define that portion of the beach-dune system which is subject to severe *139 fluctuations based upon a 100 year storm surge, storm waves, or other predictable weather. Section 161.053(l)(a), Florida Statutes.
The Department establishes a CCCL after determining through a comprehensive engineering study and topographic survey that a CCCL is necessary for the protection of upland properties and the control of beach erosion....
[[Image here]]
... The Petitioner states that it’s (sic) lands “front” on St. Joe Bay, and suggests that the agency has no authority to establish a CCCL over the land at issue. The statute does not define “fronting.”
Coastal construction control lines are established so as to define that portion of the beach-dune system which is subject to severe fluctuation based upon a 100 year storm surge, storm waves, or other predictable weather conditions. The purpose of a CCCL is to protect the sand beaches and coastal dune systems of the state. In relevant part, the Department asserts that a sand beach “fronts” on the Gulf of Mexico, if the beach can be directly affected or influenced by a 100-year storm event in the Gulf. Given the purpose of the CCCL program, the Department’s interpretation of “fronting” is reasonable.
In this case, the sand beach between the R-Monument # 15 and the R-Monument # 30 are (sic) affected by the daily wave and water activity of the Gulf. Gulf waves carry sand into the area from beaches north of the Petitioner’s land and deposit the sand as the wave energy dissipates. It is reasonable to assume that beach areas affected on a daily basis by Gulf wind and water would be affected by a 100-year storm event from the same water. For the purposes of establishing a CCCL, the sand beach between the R-Monument #15 and the R-Monument # 30 “fronts” on the Gulf of Mexico.
[[Image here]]
The Petitioner asserts that the establishment of the line by rule is arbitrary or capricious in that the line is based upon inaccurate studies which fail to account for actual storm data. The Petitioner further asserts that the Department failed to conduct a comprehensive engineering study and topographic survey which establishes the necessity for a CCCL across Petitioner’s property.
A capricious action is one taken without thought or reason or which is taken irrationally. An arbitrary decision is one that is not supported by facts or logic or that is despotic. In this case, the CCCL is located based upon a complex computer model which projects expected 100-year storm tides, and utilizes extensive weather and topographic data to predict the effect of such tides. Although the witnesses who testified as to the preparation of the Gulf County CCCL study are not professional engineers, the evidence is insufficient to establish that the data upon which the witnesses relied in performing the study was not based upon appropriate engineering and topographic information.
[[Image here]]
... The evidence does not establish that the Department’s projections are invalid or unreasonable. It certainly does not establish that the CCCL was determined without thought or reason, or unsupported by facts or logic.
Section 161.052, Florida Statutes, adopted by the 1970 Legislature, prohibits unauthorized excavation or construction “within 50 feet of the line of mean high water at any riparian coastal location fronting the Gulf of Mexico or Atlantic coast shoreline of the state, exclusive of bays, inlets, rivers, bayous, creeks, passes, and the like.” (emphasis supplied). The 1971 Legislature adopted Section 161.053, Florida Statutes, authorizing the establishment of “coastal construction setback lines along the sand beaches of the State of Florida fronting on the Atlantic Ocean and the Gulf of Mexico.”
Contrary to the language of Section 161.052, in adopting Section 161.053 the Legislature did not specifically exclude “bays, inlets, rivers, bayous, creeks, *140 passes, and the like” from areas “fronting” on the Atlantic Ocean or Gulf of Mexico for which coastal construction setback lines were to be set. One must assume that, had the Legislature intended to exempt property located on bays from inclusion in an area protected by a CCCL, the Legislature would have specifically done so, as it has done previously. Although Section 161.053 has been amended subsequently, none of the amendments. suggest that the Legislature intended to exempt sand beach and dune systems which lie adjacent to bays from beach-dune systems for which coastal construction control lines are to be established. The statute authorizes the Department to “establish coastal construction control lines on a county basis along the sand beaches of the state fronting on the Atlantic Ocean, the Gulf of Mexico, or the Straits of Florida. Such lines shall be established so as to define that portion of the beach-dune system which is subject to severe fluctuations based upon a 100-year storm surge’, storm waves, or other predictable weather conditions.”
The Department is authorized to set control lines so as to define the beach-dune system subject to severe fluctuations based upon a 100-year storm surge, storm waves, or other predictable weather conditions. In this case, the evidence establishes that Petitioner’s Gulf County lands between R-Monument # 15 and R-Monument # 30 front on the Gulf of Mexico based upon the effect of Gulf wind and wave action on the property, and that such lands are subject to severe fluctuations based upon a 100-year storm surge, storm waves, or other predictable weather conditions.
FINAL ORDER
Based upon the foregoing findings of fact and conclusions of law, it is determined that the portion of Rule 16B-26.-016 Florida Administrative Code, which establishes a Gulf County coastal construction control line is not an invalid exercise of delegated legislative authority, and the petition is DISMISSED.
The hearing officer’s findings on both issues are supported by competent, substantial evidence in the record. The evidence clearly establishes that the land in question is part of the beach-dune system which is subject to the direct influence of weather conditions in the Gulf of Mexico, including severe fluctuations caused by a 100-year storm event. In the context of determining the lands within its CCCL jurisdiction, DNR has given “fronting” the only logical and appropriate interpretation in light of its statutory duty to protect the “beach-dune system.”[1] Contrary to the definition proposed by appellant’s expert (“facing on” or “abutting”), DNR’s definition reflects the physical interaction between the sand beach at issue and the Gulf of Mexico. The record evidence also supports DNR’s choice of methodology and the calculations used to determine the location of the CCCL.
AFFIRMED.
WIGGINTON and ZEHMER, JJ., concur.

. In Island Harbor Beach Club, Ltd. v. Department of Natural Resources, 495 So.2d 209, 214 (Fla. 1st DCA 1986), this court upheld DNR’s definition of the "beach-dune system" over which the CCCL is to be established:
that portion of the coast where there has been, or is expected to be over time and as a matter of natural occurrence, cyclical and dynamic emergence,' destruction, and reemergence of beach and dune structures.