VAN NORTWICK, J.
Wallace Corporation appeals a final order of the Florida Department of Environmental Protection (DEP) granting appellee City of Miami Beach a permit to construct a beachwalk seaward of the coastal construction control line (CCCL). We affirm all issues raised on appeal. We write to address appellant’s argument that the record lacks competent substantial evidence to support a finding that the beachwalk project is a “structure required for the prevention of erosion” under section 161.201, Florida Statutes (1997).

Factual and Procedural Background

Wallace owns the Richmond, an upscale oceanfront hotel on Miami Beach. Approximately twenty years ago, the beach within the City of Miami Beach was ren-ourished and restored. As a result, a dune was created along the beach and was later vegetated for erosion control. The erosion control line (ECL), aligned immediately west and landward of this dune, is located along the mean high water line prior to the beach restoration. Title to the land seaward of the ECL is vested in the state by right of its sovereignty, and title to the land landward of the ECL is vested in the riparian upland owners, of which Wallace is one, whose lands either abut the ECL or would have abutted the line if it had been located directly on the mean high water line when the beach renourishment project began. See § 161.191(1), Fla. Stat. (1997); see also § 161.151(3), Fla. Stat. (1997).
The Loew’s Miami Beach Convention Center Hotel is a joint project by the City and a private corporation. The City proposed the construction of a beachwalk to provide pedestrian access between the City’s Art Deco District on the south end and the convention center on the north end. As designed, the proposed beach-walk would connect Lummus Park on the south with the existing boardwalk at 21st Street on the north. The beachwalk would be landward of the dune and run approximately 3,500 feet, meandering in a location that would vary between 12 feet landward to 85 feet seaward of the ECL. It would be constructed of paver blocks installed on a crushed shell or rock base and would include an 18 inch high wall along 605 feet of the beachwalk at the street ends, vegetation on the sides, and 14 foot high lights along the east side. The lighting is designed to require 120 degree shields on the backside of the lights to direct the light downward and to the west away from the beach. The beachwalk would connect to each of the five adjacent street ends and provide adequate ramps, slopes and curves to comply with requirements of the Americans With Disabilities Act and accommodate emergency vehicle access to the beach. The beachwalk would include beach access points extending across the dune and onto dry beach. The City’s stated purposes of the beachwalk project are to allow pedestrian traffic to move efficiently along the beach-dune system and to channel public access to the beach through controlled access points.
The beachwalk was to be located seaward of the CCCL, the line which establishes that portion of the beach-dune system subject to severe fluctuations based on a 100-year storm surge, storm waves, or other predictable weather conditions. See § 161.053(l)(a). As a result, a permit from DEP was required. § 161.053(5), Fla. Stat. (1997); see also 62(b)-33.005 F.A.C. When DEP issued a proposed order to authorize and approve the City’s application for the CCCL permit, Wallace petitioned for an administrative hearing pursuant to section 120.57(1), Florida Statutes (1997). As a result of Wallace’s opposition to the beachwalk, the project design was amended so that the beachwalk did not cross the Richmond Hotel property, but stopped to the south and resumed to the north of the property.
*1137 Section 161.201, Florida Statutes (1997), provides that any structure constructed seaward of the ECL, must be “required for the prevention of erosion.” Wallace contended in its petition, among other things, that the project was not required for the prevention of erosion and that its hotel property and nesting marine turtles would be adversely affected by the beach-walk construction. At the hearing before the administrative law judge (ALJ), it was Wallace’s position that the objective of the beachwalk project was never to provide for erosion control, but to facilitate people walking to the convention center. The City presented evidence, however, that demonstrated a need for the project to prevent beach erosion. The record reflects that manmade crossings, or “cuts,” through the dune system were increasing and creating a risk of substantial dune erosion, especially in the event of storm surge. As designed, the beachwalk project would fill in the sand and revegetate these manmade paths and would control north/south access along the beach and direct traffic across the dunes on the established beach accesses, thus discouraging new manmade paths across the dunes.
Following the hearing, the ALJ concluded that the testimony presented by Wallace was too speculative to prove the beachwalk’s adverse impact on the Richmond Hotel. As a result, the ALJ found that Wallace lacked standing to make a challenge under section 161.201. The ALJ entered a recommended order concluding that the City had established that the beachwalk project would not have a significant adverse impact on the beach and dune system or to nesting turtles and their habitat and recommending that DEP enter a final order approving the permit.
DEP entered an order of remand to the Department of Administrative Hearings, rejecting the ALJ’s conclusion that Wallace lacked standing and requesting that the ALJ make additional factual findings and legal conclusions related to the issue of whether the City’s proposed beachwalk project, in its entirety, was “required for the prevention of erosion” under section 161.201. On remand, the ALJ entered an amended recommended order finding and concluding, as relevant to the erosion issue, as follows:
18. Currently the dune system is marred by cross-over channels cut by pedestrian traffic, through the dune. These pathways provide convenient access to the beach but do so at a cost to the dune’s efficiency and security. Because they cut through the dune in an easterly direction, they allow wind and, potentially water in a storm event, to gouge the dune.
19. The cuts in the dune undermine the efficiency of the erosion control. By installing the beachwalk proposed by the City, the number of cuts across the dune will be minimized. Moreover, they will be designed to trap sand and to promote erosion control.
20. The areas which have already been gouged will be re-vegetated to deter pedestrian use. The native vegetation planned for this work should promote erosion control and enhance the dune system. The types of vegetation and manner of planting should also deter future unauthorized pedestrian access through the dune.
21. Subsequent to the beach renourishment program, the beach, along the entire project length, has experienced a natural accretion. This means that natural erosion is not occurring. Natural erosion results from wind, tidal, or other naturally occurring influences.
22. In contrast, however, are the man-made erosion sources: pedestrian paths, cuts in the dunes which endanger the dune and limit its effectiveness. The *1138 danger from these unregulated cuts could potentially undermine the dune and accelerate erosion from natural events.
23. Dune cross-walks such as proposed by the instant project ... are required for the prevention of erosion. Thus the project in its entirety will prevent erosion.
24. The proposed project will not adversely impact the beach-dune system. Petitioner presented no evidence to establish a significant impact.
25. The project creates a net improvement of sand and vegetation to the dune and will restore all dune cuts.
[[Image here]]
28. All of the street and dune crossovers are designed to trap sand and to minimize erosion to the dune. The proposed access points significantly improve the west to east access to the beach. * * *
68.... [I]t is concluded that the project in its entirety is required for the prevention of erosion. Pedestrian traffic and unrestricted access to the beach will adversely impact the beach and dune system. The proposal will restrict points of access and limit pedestrian damage to the beach and dune system. As such, all properties along and adjacent to the proposed walk will be enhanced ....
69. As to the balance of Petitioner’s assertions, it is concluded the City has established an entitlement to the proposed permit. The project will promote erosion control and should not have a significant adverse impact on the beach and dune system. Such system will be enhanced by the additional placement of sand, the revegetation of cuts in the dune and new vegetation to the dune, and the opportunity created to trap additional sand. Further, the lighting and other improvements will not cause damage to the turtle habitat in the area of the project as adequate safeguards have been proposed to assure minimal impacts .... (emphasis supplied).
With respect to the interpretation of section 161.201, the Secretary of DEP adopted the determination of the ALJ “that the Project in its entirety is an ECL structure ‘required for the prevention of erosion’ under § 161.201....” The Secretary also adopted the recommendation that the CCCL permit be issued. This appeal ensued.

Section 161.201, Florida Statutes

Section 161.201 provides, in pertinent part, that
[T]he state shall not allow any structure to be erected upon lands created, either naturally or artificially, seaward of any erosion control line fixed in accordance with the provisions of ss. 161.141-161.211, except such structures required for the prevention of erosion. Neither shall such use be permitted by the state as may be injurious to the person, business, or property of the upland owner or lessee; and the several municipalities, counties and special districts are authorized and directed to enforce this provision through the exercise of their respective police powers, (emphasis added).
This section was adopted by the Legislature in 1970 as a part of the Beach and Shore Preservation Act, sections 161.011 through 161.242, Florida Statutes. See generally, Kenneth E. Spahn, The Beach and Shore Presewation Act: Regulating Coastal Construction in Florida, 24 Stetson L.Rev. 353 (1995); Kenneth G. Oertel & Thomas G. Tomasello, Beach, Shore and Coastal Zone Regulation, Florida Environmental & Land Use Law, Vol. II, ch. 14 (1996 Supp.). Under section 161.131, the Legislature directed that section 161.201 “shall be liberally construed by all con *1139 cerned in a manner to best accomplish the beach and shore preservation purposes and programs.”

Required for the Prevention of Erosion

Wallace argues that the record contains no evidence that the beachwalk project is “required for the prevention of erosion.” We cannot agree.
Initially, it is necessary to discuss what is required in section 161.201 when it provides that no structure be erected seaward of the ECL except “structures required for the prevention of erosion.” First, section 161.201 does not mandate that any structure erected seaward of the ECL can serve only the purpose of the prevention of erosion. The statute does provide that the upland owner or lessee shah continue to be entitled to all common law riparian rights and that nothing shah be permitted that would be “injurious to the person, business, or property of the upland owner or lessee.” § 161.201, Fla. Stat. (1997). Nevertheless, nothing in the statute prevents a structure from serving more than one purpose, although one substantial purpose must be to address a recognized need to prevent erosion.
The term “required” is not defined in the statute. Wallace asserts that the term “required” means that, under section 161.201, the structure must be “needed” or “essential” to prevent erosion, and that no witness below testified expressly that the project was “required” to prevent erosion. Appellant argues that the City simply wants a pedestrian alternative to Collins Avenue and that environmental concerns were merely an afterthought. Even if we agreed with Wallace that, by the use of the term “required” in section 161.201, the Legislature was directing that any structure must be “needed or essential” to prevent erosion,[1] below the ALJ expressly found that the structure here was required to prevent erosion and we conclude that the record supports such a finding.
Even though no witness used the exact words “required for the prevention of erosion” in testimony, the use of such “magic words” is not necessary for the evidence to be competent and substantial evidence to support the ALJ’s findings. See Caldwell v. Halifax Convalescent Center, 566 So.2d 311, 313 (Fla. 1st DCA 1990). It is for the ALJ to determine whether the structure was “required,” based on the preponderance of the evidence. Here, the record contains an abundance of competent substantial evidence from which the ALJ could find that the beachwalk project was “necessary” or “required” to prevent erosion. For example, the record evidence shows that manmade cuts across the dune system are among the chief sources of dune erosion. Further, there is competent substantial evidence that the beachwalk project, or a similar project, would be necessary to reduce the number of manmade cuts across the dunes and deter unauthorized pedestrian access through and across the dunes; and that the beachwalk project would limit pedestrian access to the beach to controlled points, repair the existing cuts, deter the creation of future cuts, trap sand, plant vegetation, and increase the height of the dunes, all preventing the erosive effects of wind and tide. This evidence certainly shows both the necessity for erosion control and the specific manner in which the beachwalk project should accomplish the required prevention of erosion. Although the record contains conflicting evidence on this issue, it is the role of the fact finder, not this court, to weigh the evidence. See *1140 Heifetz v. Department of Bus. Reg., 475 So.2d 1277, 1281-82 (Fla. 1st DCA 1985).
A reviewing court may set aside agency action only if it finds that there is no competent and substantial evidence supporting the findings of facts on which the agency action rests. See § 120.68(10), Fla. Stat. (1997); Legal Envtl. Assistance Found., Inc. v. Clark, 668 So.2d 982 (Fla.1996). Further, the DEP is the state agency charged with the primary responsibility of administering and enforcing the provisions of chapter 161, Florida Statutes. An agency has the principal responsibility of interpreting statutes within its regulatory jurisdiction and expertise. See St. Joseph Land and Dev. Co. v. Florida Dep’t of Natural Res., 596 So.2d 137 (Fla. 1st DCA 1992)(accepting the proposition that DNR, DEP’s predecessor, had the authority to establish the CCCL and administer it). An agency’s construction of a statute which it is given the power to administer will not be overturned on appeal unless it is clearly erroneous. See Island Harbor v. Department of Natural Res., 495 So.2d 209, 214 (Fla. 1st DCA 1986)(recognizing the authority of DNR, DEP’s predecessor, to construe the statutory term “beachdune system”).
We conclude that Wallace has not demonstrated the absence of competent and substantial evidence upon which the findings of fact and conclusions of law were made by the ALJ. Accordingly, the final order granting the beachwalk permit is AFFIRMED.
WEBSTER and DAVIS, JJ., concur.

. We note that Webster’s Third New Intema-tional Dictionary at 1929 (1967) provides a less restrictive meaning of "required.” The definition includes "to call for as suitable in a particular case” and "to demand as necessary or essential.”