496 So.2d 899 (1986)
CITY OF MIAMI, Appellant/Cross-Appellee,
v.
James SIMPSON, Appellee/Cross-Appellant.
No. BK-23.
District Court of Appeal of Florida, First District.
October 21, 1986.
Lucia A. Daugherty, City Atty., Rafael E. Suarez-Rivas, Asst. City Atty., Miami, for appellant/cross-appellee.
Richard A. Sicking of Kaplan, Sicking & Bloom, Miami, for appellee/cross-appellant.
*900 ERVIN, Judge.
Appellant/Cross-Appellee, City of Miami, appeals the award of wage loss benefits in this workers' compensation claim. Appellee/Cross-Appellant appeals the failure of the deputy commissioner (dc) to award statutory penalties. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
Claimant was employed by the City of Miami as a fire fighter and paramedic beginning in 1972. In 1980, the claimant suffered a compensable back injury while working as a paramedic, and, on April 26, 1982, he voluntarily resigned from his position with the city. As recited in our earlier opinion involving the same parties, the resignation was unrelated to claimant's injury, but was instead motivated by the need to gain favorable recommendations from his supervisors to be presented to a federal court during sentencing, following his conviction for drug smuggling by airplane. City of Miami v. Simpson, 459 So.2d 326, 327 (Fla. 1st DCA 1984). Claimant reached maximum medical improvement (MMI) October 13, 1982. After his resignation, he enrolled in a rehabilitation program to be trained as a forester, and received a degree in forestry from the University of Northern Arizona in December 1984. Claimant accepted a job as a forester, which began on January 6, 1985.
Claimant was awarded temporary total disability benefits in connection with the rehabilitation program by order dated October 25, 1983, which were reversed by us in City of Miami v. Simpson. In reversing, we observed that the claimant had embarked upon a rehabilitation program "before informing the employer of any need for or interest in such a program." 459 So.2d at 327. Following our mandate, the claimant subsequently filed claims for wage loss benefits which were controverted by the employer. In a second order, dated October 28, 1985, the dc awarded wage loss benefits, from September 19, 1982 to July 31, 1985, on the ground that the findings of fact recited in the 1983 order, relating to wage-loss, were law of the case or res judicata, and controlled subsequent proceedings concerning wage-loss.[1]
We agree with appellant that the dc erred in applying res judicata regarding the issue of wage-loss. Although the doctrine of res judicata is generally applicable to workers' compensation cases, Wellcraft Marine Corp. v. Turner, 435 So.2d 864 (Fla. 1st DCA 1983), it has no relevancy to the facts at bar. The only item concerning wage-loss in the decretal portion of the 1983 order, item 2, did not award specific benefits.[2] Since there was no wage loss award, the dc's discussion of wage-loss was non-final and non-appealable. See Mills Electrical Contractors v. Marthens, 417 So.2d 700 (Fla. 1st DCA 1982) pet. for review denied, 429 So.2d 6 (Fla. 1983) (an order deciding the issue of compensability in favor of claimant but not awarding benefits); Sunny Pines Convalescent Center v. Walters, 422 So.2d 1079 (Fla. 1st DCA 1982) (reservation of jurisdiction to award attorney's fees). As "the doctrine [of res judicata] will not be applied where, in the prior action, there was not an unquestionable, clear-cut official adjudication[,]" 32 Fla.Jur. 2d Judgments and Decrees § 97 (1981), it has no bearing as to claimant's right to wage-loss in the instant case. Wellcraft, 435 So.2d at 865, observes that the statutory scheme governing wage-loss affords an e/c the right to contest succeeding wage loss claims on appropriate grounds, but holds that estoppel by judgment precludes an e/c from relitigating the issue of permanent impairment, unless it argues that a change in claimant's condition has occurred. Appellant has not objected to the dc's findings of permanent *901 impairment in the 1983 order, and, based on Wellcraft, would have been estopped from doing so, unless it could have proven that claimant's condition had improved.
The record discloses that after the claimant reached MMI, he was not available for employment until after he had graduated from the University of Northern Arizona. The employer argues that since the claimant terminated his employment with the city voluntarily, and because the reasons for his separation had nothing to do with the compensable injury, the causal link necessary to obtain wage loss benefits has been severed.
The fact that claimant voluntarily limited his employment for a certain period of time does not perpetually foreclose his right to wage loss benefits. See Whalen v. U.S. Elevator, 486 So.2d 670 (Fla. 1st DCA 1986); Johnston v. Super Food Services, Inc., 461 So.2d 169 (Fla. 1st DCA 1984). As this court observed in Whalen, 486 So.2d at 671:
Whatever temporary period of unemployment might be attributable solely to unrelated dislocation would logically end upon proof of prima facie injury connection by continued wage loss after a good faith job search by one whose employment status has been permanently altered by a compensable impairment which affects his competitive position in the labor market.
Although we conclude that during the time the claimant was enrolled in the unauthorized rehabilitation program, he was not entitled to wage loss benefits, such conclusion has no effect on claimant's right to wage-loss once he obtained full time employment as a forester. As we observed in Stahl v. Southeastern X-Ray, 447 So.2d 399, 401, n. 4 (Fla. 1st DCA 1984): "Obtaining and performing a full time job clearly constitutes a job `search' and market test." Therefore, when, after graduation, claimant reentered the job market in January 1985, and became employed as a forester at a lesser rate of pay than that he had received in his prior employment, he became eligible for wage loss benefits, since, as of that date, the claimant met the initial burden required in Section 440.15(3), Florida Statutes (1979), of establishing that any wage-loss was the result of the compensable injury. The burden then shifted to the employer to present affirmative proof that appellant refused work or voluntarily limited his income, Tampa Electric Co. v. Bradshaw, 477 So.2d 624, 629 (Fla. 1st DCA 1985); D.L. Amici Co. v. Jackson, 444 So.2d 978, 980-81 (Fla. 1st DCA 1983), review den., 451 So.2d 848 (Fla. 1984). No such proof was adduced here.
We also reject the argument of the employer that there is no relationship between the claimant's current wage-loss and the compensable accident. On the contrary, there is ample evidence in the record to support a finding that the claimant could not have continued to work as a paramedic after he had reached MMI. His injury prevented him from pursuing employment in the other fields in which he was trained, such as a helicopter mechanic, flight instructor or pilot. The record clearly discloses that the field of forestry is within the physical capabilities of the claimant; therefore employment within this field at lesser pay reestablishes his eligibility for wage loss benefits. We therefore affirm the award of wage-loss from the date claimant obtained employment as a forester on January 6, 1985, through July 31, 1985.
Judge Thompson in his dissent suggests that the wage loss award is barred by the statute of limitations in section 440.15(3)(b)3.a. Since the employer has failed to raise in this appeal the applicability of the statute of limitations, we do not address its applicability in our opinion. We note that it would be highly inequitable to permanently bar wage loss benefits because the claimant chose to participate in a full-time, albeit unauthorized, rehabilitation program. Cf. Underwood v. Terminal-Frouge Builders, 128 So.2d 605, 608 (Fla. 1961). (It would "violate the spirit and intent of the Workmen's Compensation Law [to penalize] a claimant for attempting *902 through the furtherance of his education to limit the effect of his disability.")
In a cross-appeal, the claimant objects to the failure of the dc to award statutory penalties. Finding no merit in the cross-appeal, we affirm that portion of the order denying penalties.
AFFIRMED in part, REVERSED in part, and remanded for further proceedings consistent with this opinion.
SHIVERS, J., concurs.
THOMPSON, J., concurs in part and dissents in part.
THOMPSON, Judge, concurring in part and dissenting in part.
I agree that the claimant was not entitled to wage-loss benefits from September 19, 1982 until January 6, 1985. However, I disagree with the majority's conclusion that because claimant had met the initial burden required in § 440.15(3), Fla. Stat. (1979) he became eligible for wage-loss benefits after he became employed as a forester at a lesser rate of pay than he received in his prior employment.
Claimant did not become eligible for wage-loss benefits. Section 440.15(3)(b)3.a. provides:
3. The right to wage-loss benefits shall terminate:
a. As of the end of any 2-year period commencing at any time subsequent to the month when the injured employee reaches the date of maximum medical improvement, unless during such 2-year period wage-loss benefits shall have been payable during at least 3 consecutive months; ...
The claimant reached maximum medical improvement (MMI) on October 13, 1982. Well over two years elapsed following the month he reached MMI with no wage-loss benefits being payable during that time. His right to wage-loss benefits had therefore terminated. I would reverse the award of all wage-loss benefits without remanding. Although this defense was not raised below, remand would be a useless act as claimant's right to wage-loss benefits has terminated and this defense can be raised in any future wage-loss proceeding. The law, the facts, and the issues in Underwood cited in the majority opinion bear no resemblance to the law, facts, and issues in the instant case.
I concur in the affirmance of the cross claim.
NOTES
[1] Findings of fact 16 and 18 in the 1983 order state that full time school attendance by the claimant was a legitimate excuse for the failure of the claimant to make a good faith job search.
[2] Item two of the decretal portion of the 1983 order reads as follows: "Thereafter, process the claimant's requests for wage loss benefits in the manner required by law and in accordance with the findings of fact contained in this order."