563 So.2d 162 (1990)
MINTON-SUN, INC. and Executive Risk Consultants, Appellants,
v.
Archie HILLS, Appellee.
No. 89-2187.
District Court of Appeal of Florida, First District.
June 7, 1990.
Juan A. Bello, of Rissman, Weisberg, Barrett & Hurt, Vero Beach, for appellants.
Michael K. Horowitz, of Lloyd, Hoskins & Pierce, Fort Pierce, for appellee.

*163 OPINION
WIGGINTON, Judge.
This is an appeal from the order of the judge of compensation claims awarding wage loss benefits and payment of medical bills, and ordering the employer/carrier to pay all outstanding bills for prescriptions and mileage reimbursement requests related to treatment of claimant's compensable injuries. The E/C raise three points on appeal challenging the judge's order. We affirm on all three points.
Claimant injured his lower back in a compensable accident[1] on January 14, 1987, when the wheel of the tractor he was driving for the employer slipped off into a two foot irrigation furrow jerking his body and shifting it in the seat. Claimant received treatment from Dr. Barrett, a neurosurgeon who ultimately performed back surgery in August 1988. On or around the first of October 1988, while recuperating, claimant suffered an incident from which he again experienced back pain, when he awoke suddenly while sleeping on a couch, jumped, and pulled himself up. He described a "terrible pull" in his back paralyzing him for a time with a burning sensation. At the hearing, he testified he was in severe pain for about three to four days when his condition began to improve. He again saw Dr. Barrett on October 18, who noted the jump off the couch which resulted in pain and which was gradually improving to the point where claimant was of the opinion he was "almost back to where he was two weeks ago." In summary, Dr. Barrett's testimony and medical records indicate that the January 14, 1987 compensable accident resulted in damage to the L3-4 and L4-5 levels. However, the October 1988 "couch jumping" incident involved the L5-S1 level and the SI joint. Those new findings were not present in earlier diagnostic studies. Dr. Barrett opined that as a result of the "condition" for which he was treated, claimant had a 15% permanent impairment and reached MMI on February 3, 1989. The doctor also opined that the "couch jumping" episode constituted an "aggravation" of claimant's underlying back condition.
In her order, the judge found that claimant reached maximum medical improvement on February 3, 1989, and that as a result of the compensable injury he sustained a 15% impairment to the body as a whole. She accepted the testimony of Dr. Barrett that the condition for which he treated claimant was causally related to claimant's accident of January 14, 1987, and that the "couch jumping" incident "constituted merely a temporary exacerbation of the injuries the claimant sustained in the industrial accident, and ... that Dr. Barrett's testimony taken as a whole supports no other conclusion." In answer to the E/C's Point I on appeal, we hold that that latter finding by the judge was based on competent and substantial evidence and affirm.
Under Point II, the E/C argue the judge's finding  that the October 1988 couch incident constituted a temporary exacerbation of the compensable injuries  amounted to an improper reverse merger. They assert that claimant sustained a noncompensable injury after his alleged compensable industrial accident resulting in an identifiable injury distinct from the injuries stemming from the compensable accident. Consequently, the E/C submit that they should not be held responsible for medical benefits and compensation benefits related to the new findings at the L5-S1 and SI joint following the October 1988 incident.
In answer to this argument, we first note the judge's observations on this point that at the time of the second noncompensable accident, claimant had not reached MMI from the initial compensable injury, was totally disabled and actively recuperating from major surgery on his low back, and was thus obviously still suffering from the effects of that compensable injury in October 1988. The judge found nothing in the testimony of Dr. Barrett regarding the couch incident indicating a break in the causal chain between the industrial accident and the disability suffered by claimant at the time of the hearing and from which *164 he had been suffering ever since the industrial accident.
Moreover, even assuming (without deciding) that the couch incident may be viewed as a subsequent independent cause of injury, a "reverse merger" analysis is inappropriate under the particular circumstances of the instant case where the claim was for wage-loss benefits. As correctly noted by the judge, where wage loss benefits are sought, "[t]he burden of proof is on the claimant to prove all elements of a wage loss claim, including the most basic element `that his physical limitation[s] subsequent to his accident were a contributing causal factor in his alleged wage loss.' Superior Pontiac v. Hearn, 458 So.2d 1197, 1199 (Fla. 1st DCA 1984)." Additionally, it was incumbent upon claimant under Section 440.15(3)(b)1., Florida Statutes (1985), to show that he suffered a permanent impairment arising from the compensable accident. In the instant case, there was competent and substantial evidence that claimant suffered a 15% impairment of the body as a whole, of which percentage at least some portion, if not all, was attributable to the compensable injury  based on the medical testimony of Dr. Barrett. Further, since the E/C do not contest the judge's finding that claimant adduced competent and substantial evidence from which it could be inferred that a causal relationship existed between claimant's wage loss and his physical limitations arising from the industrial accident, we affirm the award of wage loss in the instant case.
We also hold the judge properly ordered the E/C to pay certain medical bills found to be related to the industrial accident. Additionally, the judge did not err in finding the E/C responsible for "all outstanding bills for prescriptions and mileage reimbursement requests ... related to treatment for his compensable injuries."
Finally, we affirm the judge's rejection of the E/C's idiopathic condition defense under Point III. The E/C attempt to argue that the accident was not compensable because any similar circumstance could have triggered an onset of claimant's lower back symptoms, given evidence that claimant had a preexisting degenerative disc disease and osteophyte formations. Here, the defense of idiopathic condition must fail since claimant exposed himself to risks and conditions in his employment environment different from those encountered in his nonemployment life. Compare House v. Preferred Auto Leasing, 476 So.2d 1337 (Fla. 1st DCA 1985).
For the foregoing reasons, the order of the judge of compensation claims is
AFFIRMED.
SMITH and WENTWORTH, JJ., concur.
NOTES
[1] Because of our resolution of Point III, the accident is deemed compensable.