JOANOS, Judge.
This is an appeal and cross-appeal from a workers’ compensation order. The claimant challenges the denial of his claim for wage loss benefits based on a deemed wage earning capacity during the period the claimant voluntarily limited his income by enrollment in a vocational rehabilitation program. The employer/carrier cross-appeal an award of fifty-two weeks of rehabilitation services and rehabilitation temporary total disability (TTD) benefits, alleging the employer/carrier had already provided twenty-six weeks of rehabilitation services and rehabilitation TTD. We reverse.
Claimant suffered an industrial accident and injury on August 25, 1989, while employed as a roofer, earning $9.00 per hour as a working foreman. Claimant’s original injuries included two broken heels, damage to his left knee, and fractured vertebrae. In February 1985, after a recuperative period, but before reaching maximum medical *461 improvement, claimant returned to work for the employer. His job duties involved answering the telephone and running errands, for which he was paid $6.00 per hour. In 1986, claimant suffered a re-injury which ultimately required further surgery. The parties stipulated that claimant reached maximum medical improvement as of August 16, 1988, with a permanent impairment which precluded his returning to his former occupation. Claimant looked for other employment from October 1988 until August 1989, but received no job offers.
The record reflects that employer/carrier provided claimant with vocational services designed to assist his return to gainful employment. After vocational testing revealed that claimant performed poorly in English writing skills and mathematics, counselors recommended remedial courses in these areas, both to facilitate claimant’s ability to conduct a job search and to bring his mathematics ability to the entry level required for a course in electronics assembly and construction. Claimant had expressed an interest in such a course. To this end, claimant attended St. Petersburg Junior College from May 17, 1987, through July 16, 1987, and from August 24, 1987, through December 18, 1987, at the expense of employer/carrier. Employer/carrier also paid TTD benefits during claimant’s enrollment in the English and mathematics courses.
Upon receipt of additional information regarding the training program and job possibilities in electronics assembly, claimant concluded the salary potential would not equal his former wages, and that he was unsuited to such confined working conditions. Additional vocational testing and evaluation indicated that claimant had a high probability of succeeding in the field of mechanics and outdoor engine repair. The vocational evaluation identified the marine engine program at SCVC as the most appropriate choice for retraining. On May 1, 1989, claimant’s attorney formally requested that employer/carrier provide retraining for claimant in the marine engine mechanics program at SCVC. The carrier agreed to provide retraining, conditioned on a review of the course to determine its cost effectiveness, and job opportunities in the area. Thereafter, the carrier advised that it would not authorize training at SCVC, but offered alternative programs at Tampa Bay Vocational Center and Pinellas VoTech Center. The alternative programs offered by the carrier were deemed unacceptable by claimant, because they were night courses designed to provide recreational boaters with boating maintenance skills, rather than the skills needed for the open marketplace. Claimant’s attorney advised the carrier that claimant had decided to pursue the training program in marine engine mechanics at SCVC beginning August 28, 1989, and would seek a hearing to determine the carrier’s responsibility to provide tuition, books, and TTD benefits for rehabilitation purposes.
On August 25, 1989, claimant filed a claim for rehabilitative training and education at Sarasota County Vocational Center (SCVC), for a course in marine engine mechanics, and TTD compensation for rehabilitation purposes upon commencement of such program on August 28, 1989. A hearing was held on the claim on March 22, 1990, at which time claimant made an alternative claim for wage loss benefits for the period beginning August 29, 1989.
Evidence adduced at the hearing revealed that the marine engine mechanics course at SCVC is a two-year program. Due to the number of marinas and major boating manufacturers in the area, completion of the program virtually guarantees employment. Claimant’s instructor at SCVC testified that in his observations of claimant, he appeared to experience no difficulty with the physical demands of the program. The instructor further stated that claimant had maintained excellent grades and an outstanding attendance record over the first nine months of the course. Since the physical demands would be no greater during the remainder of the course, he had no reason to doubt claimant’s ability to complete the program successfully. The entry level pay scale for a marine mechanic is $5.50 to $5.75 per hour, *462 with an earning potential of $11.00 to $12.00 per hour.
In the order here appealed, the judge of compensation claims found that the courses claimant completed at St. Petersburg Junior College were designed to improve his math and English comprehension so as to facilitate his employability in the open labor market, but were not rehabilitation training as contemplated by section 440.-49(l)(a), Florida Statutes (1983). Consequently, the judge found that claimant’s eligibility period for vocational retraining was not reduced nor otherwise affected by the remedial course work at the junior college. The judge further found that the marine engine mechanics program at SCVC was a suitable and appropriate rehabilitation training program for claimant, and that there exists an extensive labor market for marine engine mechanics in the west-central Florida area. Based on his finding that claimant had demonstrated his suitability for the SCVC program by having successfully completed nine months of the prescribed curriculum, the judge concluded that the two-year program was suitable, but under section 440.49, the employer could be required to pay for no more than fifty-two weeks of the program. Thus, the order directs employer/carrier to pay for the last fifty-two weeks of the program. With regard to wage loss benefits, the judge found that claimant had voluntarily limited his income by enrollment in the vocational training program, and had not demonstrated an appropriate basis for application of a deemed wage earning capacity for the period since August 29, 1989.
Claimant challenges only the judge’s finding that an appropriate basis had not been demonstrated for application of a deemed earning capacity. The pertinent portion of Section 440.15(3)(b)2, Florida Statutes (1983), provides:
In the event the employee voluntarily limits his income or fails to accept employment commensurate with his abilities, the salary, wages, and other remuneration the employee is able to earn after the date of maximum medical improvement shall be deemed to be the amount the employee would have earned if the employee did not limit his income or accepted appropriate employment.... the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury.
The claimant bears the burden to prove all elements of a wage loss claim. Superior Pontiac v. Hearn, 458 So.2d 1197, 1199 (Fla. 1st DCA 1984). The basic or primary element is proof that the physical limitations attributable to the industrial accident are a contributory causal factor in the alleged wage loss. Parker v. Eaton Corp., 554 So.2d 644, 647 (Fla. 1st DCA 1989); Wal-Mart v. Ball, 541 So.2d 752, 755 (Fla. 1st DCA 1989); Superior Pontiac v. Hearn, 458 So.2d at 1199. A good faith work search is an “evidentiary vehicle by which employability, or lack of it, is proven.” Anderson v. S & S Diversified, Inc., 477 So.2d 591, 594 (Fla. 1st DCA 1985), review denied, 486 So.2d 597 (Fla.1986), quoting Flesche v. Interstate Warehouse, 411 So.2d 919, 922 (Fla. 1st DCA 1982). However, the existence or absence of a work search is not determinative of the issue, and the deemed earnings provision is as applicable to months in which no work search is performed as it is to those months when an inadequate work search is performed. Baggett v. Mulberry Construction Co., 549 So.2d 1386, 1389 (Fla. 1st DCA 1989); Anderson v. S & S Diversified, Inc., 477 So.2d at 594.
The record in the instant case indicates that claimant satisfied his initial burden to show a causal connection between his work-related injury and a subsequent diminution of income. In addition, it is undisputed that claimant performed no work search during the period that he was enrolled in the marine engine mechanics program at SCVC, which is the period for which wage loss benefits was claimed. After recuperation from his initial compensa-ble injury, claimant returned to light duty office work for the employer, earning $6.00 per hour. During this period of office employment, claimant received wage loss benefits based on his actual earnings. There has been no showing that claimant is capa *463 ble of earning more than his $6.00 per hour post-injury earnings with the employer, or that claimant rejected suitable employment. The judge’s finding that claimant voluntarily limited his income by attending the marine engine mechanics program at SCVC served as a trigger for application of the section 440.15(3)(b)2 deemed earnings formula. See Anderson v. S & S Diversified, Inc., 477 So.2d at 593-594. We conclude that the undisputed evidence that claimant’s permanent impairment resulting from his compensable injury precludes his return to his former occupation as a roofer, and evidence that claimant has an earning capacity of $6.00 per hour as opposed to the $9.00 per hour he formerly earned, constitutes competent substantial evidence to support a wage loss award for the period at issue, based on deemed earnings of $6.00 per hour.
The issue on cross-appeal concerns the award of fifty-two weeks of rehabilitative services, together with fifty-two weeks of TTD benefits. The statute applicable in this case is section 440.49(1), Florida Statutes (1983), which provides in part:
(d) When it appears that rehabilitation is necessary and desirable to restore the injured employee to suitable gainful employment, the employee shall be entitled to reasonable and proper rehabilitation services for a period not to exceed 26 weeks, which period may be extended for an additional period not to exceed 26 additional weeks, if such extended period is determined to be necessary and proper by the deputy commissioner. However, no carrier or employer shall be precluded from continuing such rehabilitation beyond such period voluntarily.
[[Image here]]
(e) Temporary disability benefits paid pursuant to s. 440.15(2)(a) and (4) ... shall include such period as the employee may be receiving training or education under a rehabilitation program pursuant to paragraphs (l)(a) and (d)....
As employer/carrier assert, the critical inquiry on this point is whether the remedial mathematics and English courses provided at the expense of employer/carrier at St. Petersburg Junior College constituted the “rehabilitation services” contemplated by section 440.49, Florida Statutes (1983). Our research has disclosed no case law expressly addressing a question of this nature, nor have the parties furnished us with one. In Viking Sprinkler Co. v. Thomas, 413 So.2d 816 (Fla. 1st DCA 1982), this court determined that specialized job placement does not constitute rehabilitation under the statute. In Bammac, Inc. v. Grady, 500 So.2d 274 (Fla. 1st DCA 1986), the court noted that testing and evaluation procedures constitute rehabilitation services within the meaning of the statute.
The section 440.49(l)(a) rehabilitation services to which an injured employee is entitled are such services as will return the employee to suitable gainful employment. “Suitable gainful employment” for purposes of the statute is “employment or self-employment which is reasonably attainable in light of the individual’s age, education, previous occupation, and injury and which offers an opportunity to restore the individual as soon as practicable and as nearly as possible to his average weekly earnings at the time of his injury.” Although the statute does not define “rehabilitation services” in express terms, application of the “ejusdem generis” canon of statutory construction[1] indicates that such services encompass the “training and education” which will prepare the employee for suitable gainful employment.
The remedial mathematics and English courses at issue on cross-appeal were provided to claimant to enhance his job search skills and to qualify him for a training program in electronics assembly, a field in which claimant had expressed an interest. *464 He later rejected that field as not having a potential for sufficient earnings. The judge’s finding that the remedial course work does not represent the character of rehabilitation contemplated by section 440.-49(l)(a) is a recognition that the statutory language emphasizes vocational training as opposed to training in general skills. Nevertheless, since basic mathematics and English communication skills are a prerequisite to virtually every vocational training program, it appears that education in these skills should be considered a rehabilitative service which offers “an opportunity to restore the individual ... to his average weekly earnings at the time of injury.” § 440.49(l)(a), Fla.Stat. (1983).
We conclude that the remedial English and mathematics courses undertaken by claimant at the recommendation of vocational counselors and at the expense of employer/carrier fall within the purview of the rehabilitation services contemplated by section 440.49(l)(a). The remedial course work was clearly education having as its goal the return of claimant to suitable gainful employment. Therefore, the employer/carrier were entitled to a credit for the twenty-six weeks of remedial courses provided to claimant at St. Petersburg Junior College, together with credit for twenty-six weeks of TTD benefits provided in conjunction with that course work.
Accordingly, the order appealed is reversed with respect to the denial of wage loss benefits based on a deemed earnings capacity, and remanded with directions to consider an award of such benefits based on deemed earnings of $6.00 per hour. The denial of a credit for the twenty-six weeks of remedial course work and TTD benefits already provided by the employer/carrier is reversed and remanded with directions to consider crediting employer/carrier for such education and TTD benefits. In all other respects, the order of the judge of compensation claims is affirmed.
ERVIN and MINER, JJ., concur.

. The doctrine ejusdem generis is a rule of construction to aid in ascertaining legislative intent when there is uncertainty. Under this rule, where general words follow the enumeration of a particular class or classes of things, the general words will be construed as applying to things of the same class as that enumerated. Black’s Law Dictionary 464 (5th ed.1979). Its application in this case is warranted as an aid to determining legislative intent with regard to the nature and character of services included within the term "rehabilitation services.”