606 So.2d 410 (1992)
Robert E. NICKOLLS, Appellant,
v.
UNIVERSITY OF FLORIDA and Division of Risk Management, Appellees.
No. 90-72.
District Court of Appeal of Florida, First District.
September 4, 1992.
*411 Mark A. Massey, Ocala, for appellant.
Barry D. Graves, Gainesville, for appellee.
WOLF, Judge.
Claimant, Nickolls, in this workers' compensation appeal, contends that the judge of compensation claims (JCC) erred in denying his claim for temporary total disability (TTD) benefits, remedial treatment, and vocational rehabilitation. The JCC denied the requested benefits and found that the claimant was capable of working and had been capable of working since May 11, 1989.[1] The JCC partially based this finding on the lack of a good-faith job search by the claimant. While we disagree with the claimant's contention that there was not competent substantial evidence to support the JCC's finding concerning the claimant's physical restrictions, we must remand the case for further consideration in light of the JCC's improper determination that the claimant was required to perform a work search where the employer/carrier (E/C) failed to inform the claimant of this obligation.
There is no dispute that the claimant suffered a compensable injury on February 11, 1988, and that the E/C voluntarily paid benefits until May 1989. The claimant testified that he tried to work on May 11, 1989, but had to quit after four hours because of pain. The JCC, however, found there were substantial inconsistencies between the claimant's alleged inability to work and complaints of pain and the evidence of his actual work history and abilities. In making this determination, the JCC considered the testimony of Dr. Oregon Hunter, Dr. Michael McMillan, Viana Drummond, a rehabilitation specialist, and James Dees, the claimant's nephew who had worked, hunted, and fished with the claimant extensively before and after the accident.
Dr. Hunter, a physician who specialized in physical medicine, rehabilitation and electro-diagnostic medicine, began treating the claimant in May 1988. Dr. Hunter felt that the claimant had been temporarily totally disabled, but reached MMI in September of 1988. He released the claimant to light-duty work in November of 1988.[2] There is no indication that the limited restrictions placed on the claimant by Dr. Hunter would preclude him from performing his prior employment.
After performing the Waddell sign test on the claimant, Hunter concluded that the claimant was exaggerating certain symptoms. Specifically, the JCC relied on testimony of Dr. Hunter concerning the claimant's performance of this test. Dr. Hunter testified that while the claimant asserted that he was unable to perform certain activities because of pain, that the claimant performed the same motions without apparent difficulty when distracted.
Dr. Hunter referred the claimant to Dr. Michael McMillan, an orthopedic surgeon, who fit the claimant with a back brace. When asked about prior back problems, the *412 claimant did not inform Dr. McMillan of any prior injuries. When Dr. McMillan saw the claimant six weeks after the initial visit (May 11, 1989), he concluded, after examining the brace and talking with the claimant, that the claimant had not worn the brace. Dr. McMillan found the claimant to be at MMI and opined that the accident of February 12, 1988, aggravated a back condition called spondylosis which is "a defect that arises in adolescence and is carried on through adulthood."[3] Dr. McMillan did not recommend that the claimant refrain from working.
Viana Drummond noted in her report and in her testimony that there were numerous inconsistencies in the claimant's physical capacities evaluation. She testified that the claimant could not lift more than five and a half pounds from his shoulder to overhead, yet when she distracted him and asked him to hand her a ten-pound sand bag, he was able to pick it up and carry it more than thirty feet. She also stated that the claimant exhibited cogwheeling movements during lifting which were inconsistent with a person suffering from back pain. She noted that the claimant exhibited every type of pain behavior medically recognized, including sharp pain, dull pain, radiating pain, numbness, tingling, burning, stabbing pain, and pins and needles all over. She testified that this variety of pain symptoms was inconsistent with a person suffering from real back pain. She further testified that the claimant maintained that he could not perform many functions nor sit for more than 45 seconds. Viana Drummond testified, however, that the correlation between the claimant's pain rating and his observed behavior was questionable.
James Dees testified that he is the claimant's nephew and has known the claimant ever since he was a child. During the year prior to the hearing, he observed the claimant extensively while working, fishing, and hunting. Mr. Dees testified that he saw the claimant work as a roofer, perform other construction work, fish with heavy equipment and pull in heavy fish, build steel cookers, work on outboard motors, manually garden, hunt, perform welding, and engage in physical fighting without any apparent difficulty and without complaining of pain. Mr. Dees was also with the claimant in October of 1989 when their airboat sunk and they were required to stay on the airboat overnight. The claimant sat on the airboat without any apparent difficulty. He also testified that the claimant had no difficulty bending down, crawling, stooping, and lifting heavy objects.
The JCC found that the claimant's inability to perform his prior job was not proven and that no evidence was presented of a good-faith job search. Accordingly, the JCC found the claimant was not entitled to any temporary total or temporary partial disability payments since May 11, 1989.[4]
We must determine the legal effect of the E/C's failure to apprise the claimant of his work search responsibilities. The initial burden is on the claimant to demonstrate an entitlement to benefits upon a change in employment status due to a compensable injury. § 440.15(3)(b)2, Fla. Stat.; Edwards v. Caulfield, 560 So.2d 364 (Fla. 1st DCA 1990); Watterman v. Interstate Truckers, Inc., 545 So.2d 408 (Fla. 1st DCA 1989). This burden may be met by proof which encompasses medical evidence or evidence of a good-faith work search. Meek v. Layne-Western Co., 566 So.2d 31 (Fla. 1st DCA 1990). Once the claimant has satisfied the initial burden, the burden of proof shifts to the E/C to demonstrate a voluntary limitation of income or to demonstrate that the injury is not creating an impairment or work-related physical restriction which would limit the claimant's ability to perform appropriate employment. § 440.15(3)(b), Fla. Stat.; Meek v. Layne-Western Co., supra; Edwards v. Caulfield, supra; Watterman, supra; Coq v. Fuchs Baking Co., 507 So.2d 138 (Fla. 1st DCA 1987).
*413 The E/C is obligated to inform the claimant that a work search may be required. Burger King v. Nicholas, 580 So.2d 656 (Fla. 1st DCA 1991). The legal effect of a failure to so inform is to relieve the claimant of the necessity of performing the work search, but this does not conclusively entitle the claimant to benefits. Burger King v. Nicholas, supra; Coq v. Fuchs Baking Co., at 141. The issue of a change in employment status as a result of the injury still remains. This determination generally involves a question of fact to be resolved by the JCC. Meek v. Layne-Western Co., supra.
The critical issue in this case is whether the claimant's ability to perform appropriate employment has been affected by his industrial injury. If the JCC should determine that the claimant's compensable injury and physical restrictions resulting therefrom preclude him from performing his prior job duties or other appropriate employment, then the issue of the work search is relevant. However, if the JCC should determine that there are no remaining physical restrictions that would preclude the claimant from performing his prior job duties or other appropriate employment, but that the claimant left his prior job for reasons unrelated to his injury (for example, unwillingness to work), then this case is indistinguishable from Burger King, supra. In Burger King, although the claimant's responsibility to perform a work search was excused because of the E/C's failure to inform the claimant of the work search requirement, the claimant was found to be not entitled to benefits because there was insufficient evidence of a causal connection between the injury and the wage loss.
In the instant case, it is undisputed that the claimant was allowed to return to his former position. The record is replete with evidence which would support the JCC's findings concerning the claimant's ability to work in his former position. If the claimant could physically resume his former duties and there is no negative change in employment status due to the accident, the claimant is not entitled to benefits.
It is impossible to tell, however, what effect the absence of a work search had on the JCC's decision. The case is, therefore, remanded for a further determination concerning the claimant's physical capabilities at the time he returned to his prior job and thereafter, and the entitlement to compensation benefits.
ALLEN, J., concurs with written opinion.
ERVIN, J., concurs in part and dissents in part with written opinion.
ALLEN, Judge, concurring.
I concur fully in the majority opinion, and write separately only to address certain inaccuracies in the dissent. Although the dissent suggests that the majority does not understand the process by which a claimant's entitlement to benefits is established, I believe it is the dissent which reflects such a lack of understanding. An employer/carrier's failure to properly inform a claimant of a work search responsibility precludes a denial of benefits due to the absence of a work search, but it does not automatically entitle the claimant to an award of benefits. Instead, the claim merely proceeds as if an adequate work search had been performed. However, an unsuccessful work search will not always entitle a claimant to benefits, and numerous cases such as Regency Inn v. Johnson, 422 So.2d 870 (Fla. 1st DCA 1982), review denied, 431 So.2d 989 (Fla. 1983), have emphasized that the circumstances must demonstrate that the industrial injury produced a change in the claimant's employment status.
The factual context of each individual case will determine whether work search evidence needs to be buttressed with other proof of a change in employment status. See generally, Publix Supermarkets, Inc. v. Franklin, 467 So.2d 1031 (Fla. 1st DCA 1985). An unsuccessful work search is merely an evidentiary vehicle by which a claimant might be able to satisfy the initial burden of proof, but it is neither the exclusive method of proof nor is it conclusive. Other evidence may establish that the claimant has an undiminished earning capacity *414 and the absence of any change in employment status. In such circumstances, the claimant's initial burden would not be met, and a claim for compensation benefits would be denied even though the claimant conducted an adequate work search or the employer/carrier failed to inform the claimant of this responsibility. Thus, in Burger King v. Nicholas, 580 So.2d 656 (Fla. 1st DCA 1991), the claimant was excused from performing a work search because the employer/carrier did not provide notice and information as to this responsibility, but the claim was denied due to other circumstances which indicated that the claimant had failed to prove a causal connection between the injury and any inability to work, or a change in employment status.
The dissent would distinguish Burger King from the present case by making factual determinations which are properly within the fact-finding function of the judge upon remand. The majority does not suggest that a voluntary termination of employment would preclude a compensation award when a claimant's burden of proof is otherwise satisfied. But the capacity to work remains relevant, and it is essential for the claimant to show that some change in employment status is due to the industrial injury. The dissent's insistence that the claimant's capacity to earn is irrelevant is somewhat puzzling in light of the dissent's attempt to distinguish Burger King as a case in which the compensable accident had no impact on that claimant's wage-earning capacity.
Indeed, the dissent's position is even more puzzling when the recent decisions of this court are examined. In Kraszewski v. Florida Highway Patrol, 594 So.2d 838 (Fla. 1st DCA 1992), the claimant was not notified of a work search responsibility, but compensation was nevertheless denied because the claimant's reduced earnings were due to unrelated personal reasons, and were not shown to be causally related to the compensable injury. In Cozzens v. St. Joe Container Co., 596 So.2d 135 (Fla. 1st DCA 1992), the claimant was excused from any work search obligation because the employer/carrier did not provide notice as to this responsibility, but this court did not compel a compensation award. Instead, the case was remanded for a determination as to whether there was a causal relationship between the industrial accident and the diminished earnings. Although this is exactly what the majority has done in the present case, it is interesting to note that the author of the dissent was a member of the panel which decided Cozzens, and concurred in that per curiam opinion without any reservation or qualification.
While there are many instances in which a claimant has been excused from any work search obligation and compensation has been awarded after an employer/carrier failed to inform the claimant of a work search responsibility, such an award is appropriate only if the circumstances (which should be considered as if an adequate work search had been performed) are sufficient to satisfy the claimant's burden of proof. Excusing a claimant from the work search responsibility does not absolutely discharge this initial burden, and does not permit a compensation award unless the circumstances demonstrate the necessary causal relation and change in employment status.
ERVIN, Judge, concurring and dissenting.
I concur with the majority in reversing and remanding this cause to the judge of compensation claims (JCC). I dissent, however, from that portion of the majority's opinion which would allow the JCC to determine "the claimant's ability to work at the time he returned to his prior job and thereafter, and the entitlement to compensation benefits." Ante at 413. By remanding this cause for further consideration regarding claimant's ability to perform his prior job duties or other appropriate employment, this court is apparently permitting the JCC to decide that he may properly deny the claim for compensation benefits if he determines from claimant's post-termination activities that there was no negative change in employment status due to the accident, notwithstanding the failure of the employer/carrier (E/C) to *415 inform the claimant of the necessity of conducting a job search.
The JCC's denial of Nickolls' claim seeking compensation benefits appears to have been influenced by testimony contradicting that of the claimant, showing that he had a capacity to work, which led the JCC to conclude that Nickolls was exaggerating his complaints of pain in order to obtain benefits. Such contradictory testimony may be relevant to a decision regarding whether claimant conducted a good-faith work search or voluntarily limited his income, but I consider it has no relevancy in a case such as this in which there is no dispute that claimant suffered an injury by accident arising out of and in the course of employment, that he thereafter received voluntary payments of compensation for a substantial period of time from the E/C, that he was released to return to work with restrictions, and, following his termination from employment, was never advised of his obligation to perform a work search.
In reaching its conclusion, the majority relies in part upon this court's decision in Burger King v. Nicholas, 580 So.2d 656 (Fla. 1st DCA 1991), in directing that the case be remanded for a further determination regarding claimant's ability to work following his termination from employment. I cannot agree that Burger King compels a remand for such purpose because in my judgment there is a substantial distinction between the facts therein and those in the present case. Significantly in Burger King the panel observed that the record failed to show that claimant's capabilities were so impaired that she was unable to perform adequately her prior job with the employer in that following her work-related accident claimant received medical treatment for her injury and was directed to return to work the same day. Her treating physician, moreover, reported that claimant's injured arm at the time of her release had full range of motion and that no work limitations should be imposed. On these facts the court determined that the employee had "failed to prove a causal connection between the injury and the inability to work." Id. at 658.
Unlike the claimant in Burger King, who was released to return to work the same day of her injury and apparently continued to work without difficulty until her termination for reasons unrelated to her injury two weeks thereafter, the claimant at bar was not released to return to work until approximately 15 months following his industrial injury, during which time he received from the E/C voluntary compensation benefits. Moreover Dr. MacMillan, who released claimant to return to work in May 1989, submitted a report which restricted claimant to lifting no more than 30 pounds. Consequently, unlike the circumstances at bar, the panel in Burger King could correctly determine from the record that the claimant's compensable accident had no impact on her wage-earning capacity.
If it is the majority's position that any time an employee returns to work following an industrial injury and thereafter leaves his or her employment for reasons unrelated to the injury  a circumstance which has not been established at bar  a JCC has the authority to determine whether the employee had the physical ability to resume his or her former duties, notwithstanding the employer's failure to inform, its conclusion is not supported by this court's decision in Parker v. Eaton Corp., 554 So.2d 644 (Fla. 1st DCA 1989). There, after claimant had been released by her physician to return to work with restrictions, she was terminated from her employment for reasons unrelated to her injury. This court reversed the JCC's denial of benefits following claimant's termination for cause, stating that the JCC had erred in concluding that there was no evidence supporting a causal link between the accident and claimant's loss of income due to her termination. We pointed out that claimant had been precluded from satisfying her burden of presenting evidence showing that her compensable physical limitation was an element in the causal claim contributing to the wage loss as a result of the E/C's failure to inform the claimant of her obligation to conduct a work search.
By analogy we have held that a claimant who leaves his or her employment for reasons *416 unrelated to the compensable injury is not thereafter precluded from receiving wage-loss benefits if he or she later conducts a good-faith work search. See, e.g., Glynn v. McKenzie Tank Lines, 511 So.2d 696 (Fla. 1st DCA 1987); Rodriguez v. The Sheraton Bal Harbour Hotel, 509 So.2d 369, 371 (Fla. 1st DCA 1987); City of Miami v. Simpson, 496 So.2d 899 (Fla. 1st DCA 1986), review denied, 506 So.2d 1043 (Fla. 1987). The claimant at bar, however, who was never informed by the E/C of his duty to conduct a work search, would be barred by the majority's opinion from receiving compensation benefits for the entire period of time claimed if the JCC on remand determines  as he most probably will  that there was not a negative change in the claimant's employment status. Claimant will no doubt be confronted with a well-nigh insurmountable burden  given the evidence already presented showing a physical capacity to work  in that he will be unable to show evidence of a good-faith work search, which he cannot now possibly submit due to the employer's failure to so advise.
Because I am of the view that the majority's decision represents a fundamental misunderstanding of the process by which a claimant meets his or her burden in establishing that he or she has suffered a compensable injury which caused a change in employment status, in circumstances in which the evidence is unrefuted that the employee suffered a compensable injury, is returned to work with restrictions, is thereafter terminated for cause or otherwise, and is not advised of his or her obligation to conduct a work search, I feel constrained to state in some detail pertinent case law relating to the parties' respective burdens. In Regency Inn v. Johnson, 422 So.2d 870 (Fla. 1st DCA 1982) (rehearing en banc), review denied, 431 So.2d 989 (Fla. 1983), this court, in deciding that the nonavailability of jobs due to economic conditions does not preclude the recovery of wage-loss benefits, construed the effect of the following provision in Section 440.15(3)(b)2, Florida Statutes (1979): "Whenever a wage-loss benefit as set forth in subparagraph 1. may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury." In reaching its decision, the court set forth the following burdens required by the statute:
[T]he burden of proof provision is to require the employee to go forward with evidence showing a change in employment status due to the injury, and an adequate and good faith attempt to secure employment commensurate with his abilities so as to establish, prima facie, an economic loss and to show that he or she has not voluntarily limited his or her income or failed to accept employment commensurate with his or her abilities. Once this evidence has been presented by the employee, the burden of proving that the employee has refused work or voluntarily limited his or her income is on the employer.
Id. at 876.
Although the statute in question has since been amended, the interpretation placed upon it ten years ago in Regency Inn has been followed in numerous subsequent decisions. See, e.g., Brosnan v. Sourbeck Roofing, Inc., 578 So.2d 460, 462 (Fla. 1st DCA 1991); Minton-Sun, Inc. v. Hills, 563 So.2d 162, 164 (Fla. 1st DCA 1990); Edwards v. Caulfield, 560 So.2d 364, 374-75 (Fla. 1st DCA 1990); City of Clermont v. Rumph, 450 So.2d 573, 576 (Fla. 1st DCA), review denied, 458 So.2d 271 (Fla. 1984).
The type of evidence a claimant in a particular case must present in order to satisfy his or her initial burden of showing whether a change in employment status was brought about as a result of an industrial accident has been the subject of many decisions. For example, a claimant's bare subjective complaints of pain do not excuse the worker from the duty of conducting a work search. Mid-Florida Mining Co. v. Gibson, 517 So.2d 58 (Fla. 1st DCA 1987). It is moreover the general rule that a job search may be excused only if medical evidence is presented showing claimant's inability to work. See Philpot v. City of Miami, 541 So.2d 680 (Fla. 1st DCA 1989). Nevertheless, the work-search requirement *417 is not an essential condition to an award of compensation disability benefits. Rios v. Fred Teitelbaum Constr., 522 So.2d 1015, 1017 (Fla. 1st DCA 1988). It is rather an "evidentiary vehicle by which employability, or lack of it, is proven." Flesche v. Interstate Warehouse, 411 So.2d 919, 922 (Fla. 1st DCA 1982). Indeed, as we acknowledged in Publix Supermarkets, Inc. v. Franklin, 467 So.2d 1031, 1033 (Fla. 1st DCA 1985):
There are, of course, an extreme variety of potential evidentiary issues in establishing a prima facie case of causal connection between a compensable accident and later wage loss. Whether or not job search evidence is primary or secondary, i.e., whether it is relevant only after some other initial burden is met by a claimant, clearly must be decided in the context of particular facts, and our opinions must be read in that light.
In fact, a claimant may also satisfy his or her initial burden of establishing a causal nexus between the industrial injury and the economic loss claimed by, for example, obtaining and performing a full-time job, Waterman v. Interstate Truckers, Inc., 545 So.2d 408, 409 (Fla. 1st DCA 1989), which is considered the equivalent of a work search, Coq v. Fuchs Baking Co., 507 So.2d 138 (Fla. 1st DCA 1987), or by submitting opinion testimony establishing the value of the type of employment which claimant could have performed with his or her medical restrictions, thereby permitting a JCC to calculate the wage loss by subtracting the amount which claimant would be deemed to have earned from his or her pre-injury average weekly wage. Publix Supermarkets, Inc. v. Franklin.
As a consequence of the claimant's failure at bar to meet his initial burden of establishing that he had suffered a change in his employment status due to the compensable injury, his claim for disability benefits would most certainly have been denied prior to the announcement of this court's decision in DeFrees v. Colt & DuMont/Hit Sales, 483 So.2d 848 (Fla. 1st DCA 1986). In DeFrees this court held, on facts showing the claimant's asserted inability to continue working for the employer because she suffered from a bronchial condition and her lack of notice by the E/C of her duty to conduct a work search, that claimant could not be denied disability benefits, because Section 440.185(2)(e) and (4), Florida Statutes (1979), placed an affirmative duty upon the employer to provide a summary of the worker's "rights, benefits, and obligations." Id. at 848. Additionally, Florida Administrative Code Rule 38F-3.018 required the carrier to furnish a statement to the claimant, together with no less than four copies of wage loss forms, which contain space for documenting an employee's job search.
The obligation placed on the E/C to so inform continues, notwithstanding the claimant's knowledge that a physician has released him or her to full activity, Griffith v. McDonald's, 526 So.2d 1032, 1033 (Fla. 1st DCA 1988), or his or her awareness of notice from some person other than the E/C of the duty to conduct a work search, Morris v. Metal Industries, 491 So.2d 312 (Fla. 1st DCA 1986) (the fact that an employee was instructed by an attorney to carry out a work search is immaterial to a claim for disability benefits). Indeed, the E/C's obligation to inform is not satisfied simply by the E/C's notification to the employee to conduct a work search, but requires as well the E/C to furnish to the employee job search forms. Saavedra v. Cedars Medical Center, 584 So.2d 197 (Fla. 1st DCA 1991).
The DeFrees decision was the logical extension of our earlier opinion in Holiday Care v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982), in which we affirmed temporary partial disability benefits that were awarded to an injured worker who was unassisted by the employer in finding work after she had been released to return to work. We noted there that the "employer's duty was at the very minimum to provide the still healing and unemployed worker with forms for use in furnishing information pertinent to possible temporary partial disability benefits." Id. at 327. The responsibility imposed by Florida's Workers' Compensation Law upon the E/C *418 to aid an injured employee was stated in the following terms in Scriven:
The character and progress of the search is the employer's or carrier's business as well as the worker's. No longer will the employer or carrier abruptly terminate all benefits upon receiving a doctor's report releasing a still-healing worker to work. The obligation to pay benefits is transformed from total to partial benefits, as stated, but the obligation to pay benefits continues and, in the employer's or carrier's own interests, will be monitored by contact with the searching worker. The common incentive of both unemployed worker and employer/carrier to reestablish gainful employment serves the self-executing goals of chapter 440 and, in the employer and carrier, militates against the laissez-faire attitude condemned by this Court in Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981).
Id. at 325-26.
As a consequence of these reciprocal obligations  the duty imposed upon an employee by section 440.15(3)(b)(2) to establish that any wage loss claimed was the result of the compensable injury, and the obligation placed upon the employer by section 440.185(2)(e) and (4) to inform the injured worker of his or her responsibility for satisfying such burden  this court's case law has been consistent, with the exception of the majority's opinion, in requiring an employer to pay compensation disability benefits if the employer failed, following the employee's termination, to inform the employee of his or her duty to conduct a work search. See, e.g., Saavedra v. Cedars Medical Ctr., 584 So.2d 197 (Fla. 1st DCA 1991); Dyer v. Lakeland Health Care Ctr., 582 So.2d 760 (Fla. 1st DCA 1991); Stanley v. Okeelanta Corp., 575 So.2d 734 (Fla. 1st DCA 1991); Pan American World Airways v. Mash, 573 So.2d 383 (Fla. 1st DCA 1991); Scott v. Container Corp. of Am., 559 So.2d 399 (Fla. 1st DCA 1990); Parker v. Eaton Corp., 554 So.2d 644 (Fla. 1st DCA 1989); Coleman v. Champion Int'l, Inc., 552 So.2d 1196 (Fla. 1st DCA 1989); Mackin v. Olde World Cheese Shop, 536 So.2d 301 (Fla. 1st DCA 1988); Rios v. Fred Teitelbaum Constr., 522 So.2d 1015 (Fla. 1st DCA 1988); Coq v. Fuchs Baking Co., 507 So.2d 138 (Fla. 1st DCA 1987); Morris v. Metal Indus., 491 So.2d 312 (Fla. 1st DCA 1986); DeFrees v. Colt & DuMont/Hit Sales, 483 So.2d 848 (Fla. 1st DCA 1986).
The above decisions, and numerous others from this court, have rigidly enforced the requirement that the employer inform an employee who suffers a work-related injury, and suffers a consequent wage loss similar to the facts at bar, of his obligation to conduct a work search, making it immaterial to a claimant's entitlement to compensation benefits, if the employer failed to comply with its duty, regarding whether the claimant left his employment for reasons unrelated to his injury, or whether his post-termination activities appeared inconsistent with a claimed incapacity for work. The award of benefits to the worker under such circumstances appears to be more in the nature of a sanction against the employer  rather than a result of the employee's satisfaction of his or her burden to show that the benefits claimed were caused by the compensable injury  and they are awarded on the theory that the E/C's failure "effectively deterred ... [the claimant from] establishing entitlement to disability benefits." Parker v. Eaton Corp., 554 So.2d at 647.
The result reached by the majority regrettably represents a substantial departure from this court's established case law. I fear that a probable consequence of the majority's decision is that future cases will be decided on witnesses' testimony or surveillance films disclosing that during a given day or period of time a claimant appeared to have an unimpaired capacity to perform physical activities. Such an outcome would emasculate the statutory duty placed on the employer to inform the employee of his or her responsibility to establish that the wage loss claimed resulted from the compensable injury. In the absence of any legislative enactment removing *419 this burden from the employer,[5] I question our right to place an interpretation upon the act which would have such an effect.
Nor, in my judgment, do the opinions in Kraszewski v. Florida Highway Patrol, 594 So.2d 838 (Fla. 1st DCA 1992), and Cozzens v. St. Joe Container Co., 596 So.2d 135 (Fla. 1st DCA 1992), cited in the concurring opinion, support the majority's decision, or indicate a position contrary to that which I believe to be correct. It appears from my reading of Kraszewski that one of the issues before the court was whether claimant was entitled to have included within her average weekly wage the concurrent wages she received from an off-duty employer. This court affirmed the denial of disability benefits for the period at issue because, notwithstanding the lack of notice to claimant informing her of her duty to conduct a job search, the court noted that the claimant had returned to full-time work with her primary employer. As we have previously held, finding and holding a full-time job is considered the equivalent of a work search. Coq v. Fuchs Baking Co., 507 So.2d 138 (Fla. 1st DCA 1987). Consequently, if an employee has returned to his or her primary employment and is able to perform the same labors without any limitations, I agree entirely with the decision in Kraszewski that there is no concomitant duty placed upon an employer to inform its employee of the necessity of conducting a job search as to part-time employment for the simple reason that holding and performing one's former job is itself clear evidence of a wage-earning capacity.
In Cozzens, the JCC denied the claim for disability benefits because, inter alia, there was a lack of medical evidence supporting a causal chain between the industrial accident and the asserted wage loss in that there was evidence that claimant's wage loss resulted from an idiopathic personal condition and not from the industrial accident. In our opinion reversing and remanding, we noted that the judge supported his finding of no causal relationship by rejecting medical opinions which favored compensability of the injury on the ground that the claimant had failed to advise the doctors of an earlier noncompensable injury. The court continued that the judge could not reject a physician's medical opinion simply because the judge found that a history the employee gave to the physician was false or incomplete, unless the doctor was specifically questioned whether his or her opinion would have changed had he or she been fully apprised of the claimant's history. See, e.g., Faucher v. RCF Developers, 569 So.2d 794 (Fla. 1st DCA 1990); Curtis v. Florida Correctional Inst., 509 So.2d 1192 (Fla. 1st DCA 1987); Calleyro v. Mt. Sinai Hosp., 504 So.2d 1336 (Fla. 1st DCA), review denied, 513 So.2d 1062 (Fla. 1987).
I think it clear from a reading of Cozzens that the remand to the judge was simply to give the judge the opportunity to clarify his findings regarding whether there was a causal relationship between the accident and claimant's wage-loss, notwithstanding the lack of any failure to inform the claimant therein of his duty to conduct a job search. Reversal and remand in order to award disability benefits for the period that claimant was unaware of his responsibility to conduct a work search would obviously be inappropriate in a situation in which an *420 issue arises whether the wage loss was the result of the industrial accident or a preexisting condition. Thus, if the claimant had in fact been aware of the work-search requirement and had conducted a good faith but unavailing job search, evidence of same might demonstrate an inability to earn wages at his pre-injury level, but it would tell us nothing concerning whether such loss was caused by the industrial accident or the personal condition, which could only be established through medical evidence. See Caldwell v. Halifax Convalescent Ctr., 566 So.2d 311 (Fla. 1st DCA 1990); Conrad v. Engineering Int'l, Inc., 530 So.2d 1061 (Fla. 1st DCA 1988); International Minerals & Chem. Corp. v. Buckley, 526 So.2d 760 (Fla. 1st DCA 1988); Brown v. Broward Minority Builders Coalition, Inc., 431 So.2d 230 (Fla. 1st DCA 1983).
I therefore see nothing in the two opinions cited in the concurring opinion which would relieve an employer of its duty to inform in a situation such as that at bar in which no defense is raised that a claimant has resumed without difficulty his former employment labors or that the loss of wage-earning ability was attributable to an injury or condition which predated the industrial accident.
In the case at bar neither the medical evidence nor claimant's subjective complaints of pain excused him from his obligation to conduct a work search. Thus, the only avenue available to him for proving his entitlement to disability benefits was the submission of evidence showing that he had conducted a good-faith work search. He failed to do so, and his failure in turn was directly attributable to the E/C's violation of its statutory obligation to inform. Consequently the burden of proof never shifted to the E/C to demonstrate claimant's voluntary limitation of income or his refusal of work within his physical limitations. As a result, any evidence the E/C could offer in rebuttal revealing that the employee had, following his return to and departure from work, an undiminished capacity to work is entirely irrelevant to his claim for compensation benefits in the absence of evidence displaying the E/C's compliance with its duty to inform.
Because the E/C failed to follow its statutory obligations, the claimant in my judgment is entitled to an award of full disability compensation benefits until the date of the hearing, without an offset of deemed earnings due to any perceived voluntary limitation of income. Cf. Mackin v. Olde World Cheese Shop, 536 So.2d 301 (Fla. 1st 1988) (if E/C fails to inform claimant of job-search obligation, claimant is entitled to full compensation benefits, and the deemed earnings offset is inapplicable). I therefore conclude that Nickolls is entitled to compensation benefits from the date of his termination in May 1989, through the date of the hearing, December 11, 1989.
The question remains: To what kind of compensation benefits  temporary or permanent  is claimant entitled? The medical evidence relating to whether Nickolls had yet achieved MMI was, to say the least, confusing. Dr. Hunter, claimant's primary treating physician, testified that claimant had reached MMI in September 1988, that he released him to return to light-duty work after that date, and that he was then temporarily, totally disabled. Dr. McMillan, to whom claimant was referred by Dr. Hunter, opined that Nickolls had reached MMI on May 11, 1989, resulting in a five percent permanent impairment (PI) rating, and that the industrial accident suffered in 1988 had aggravated a preexisting back condition. A subsequent report by Dr. Hunter, dated December 5, 1989, stated that claimant had reached MMI on November 29, 1989, with an eleven percent PI to his whole body, and that he had limited claimant to performing sedentary work. Despite this evidence, the JCC failed to specifically determine whether claimant had reached MMI, although his finding that claimant was capable of working since May 11, 1989, corresponded with Dr. McMillan's MMI date.
Accordingly, I would remand this cause to the JCC for the purpose of clarifying his order to state specifically whether claimant has reached MMI, and, if so, to award wage-loss benefits through the date of the *421 hearing due to the failure of the E/C to provide the claimant the requisite notice to conduct a work search. If, on the other hand, the JCC determines from the evidence that Nickolls has not yet reached MMI, he should then award him temporary compensation benefits through the date of the hearing. Cf. Johnson v. United Parcel Serv., 513 So.2d 1336 (Fla. 1st DCA 1987).
Claimant also contends that the JCC erred in finding that there had been no evidence evincing a need for any remedial treatment not voluntarily provided by the E/C, pointing out that Dr. Hunter had recommended on November 29, 1989 continued medical treatment in the form of psychiatric consultation and a pain support recovery group, or an inpatient pain restoration program. It is unclear from the JCC's order why he denied further remedial care. If the JCC considered that claimant had reached MMI, and that no recovery or improvement from any psychiatric injury could reasonably be anticipated, then the JCC erred. The only evidence before the JCC relating to MMI pertained solely to claimant having achieved such status from an orthopedic standpoint  not from a psychiatric standpoint. See Scott v. Amick Corp., 529 So.2d 816 (Fla. 1st DCA 1988).
The E/C nonetheless argues that the claimant's need for psychiatric care and a pain support recovery group was not ripe for hearing. Although it is true that the initial claim did not make a specific request for same, an amended claim requested authorization of a functional capacity evaluation, as recommended by Dr. Hunter. The treatment that Dr. Hunter subsequently recommended involved either a pain program or psychiatric intervention as a means of alleviating claimant's chronic pain syndrome. Although this report was dated only shortly before the hearing of December 11, 1989, it is entirely consistent with the claim's general request for remedial treatment and a functional capacity evaluation. We have moreover recognized that the failure of a claimant to make a specific request for a particular surgical procedure did not relieve the E/C from its obligation to pay a resulting hospital bill therefor, in that the E/C was generally aware of the need for same, but failed to provide it. Reynolds v. Oakley Constr., 561 So.2d 1298 (Fla. 1st DCA 1990). In the case at bar, the E/C was aware of claimant's continuing complaints of pain from the medical reports it had received from the treating physicians, and it can hardly claim prejudice due to the lack of a specific claim for the procedure recommended by Dr. Hunter. In any event, remand of the prior issue relating to an award of compensation benefits should remedy any assertion by the E/C of lack of notice, and the JCC should be able to make a specific determination, either on the present record or, at his option, upon the taking of additional evidence, whether claimant is in need of the additional remedial treatment.
Turning finally to claimant's assertion that the JCC erred in denying him rehabilitation services other than those which the E/C was currently providing, the record reflects that claimant had expressed dissatisfaction with Dr. Edwin Yates, the vocational rehabilitation consultant whom the E/C provided; that he had requested authorization of an alternative vocational counselor, M.J. Novitsky, who was not furnished; and that no alternative care was provided. I cannot ascertain from the JCC's order why he stated that claimant failed to present sufficient evidence to establish the need for rehabilitative services above and beyond those then being provided. The record shows not only that the vocational rehabilitation consultant assigned to the claimant had not contacted the claimant since May 1989, but also claimant's general dissatisfaction with the counseling furnished. I consider this situation to be analogous to that involving an employee who is dissatisfied with a medical provider. If an employee communicates an objection to the employer, the employer must provide alternative care or risk a ruling by the JCC that the employer is responsible for the reasonable and necessary expenses incurred independently by the employee. Hill v. Beverly Enters., 489 So.2d 118, 120-21 (Fla. 1st DCA 1986).
In the area of rehabilitation training, in Towne v. Bates File Co., 497 So.2d 967 *422 (Fla. 1st DCA 1986), this court reversed a deputy commissioner's denial of a claim for rehabilitation benefits, observing that the claimant had informed the E/C of his desire to receive vocational training, and that aside from seeking information about the requested school in question, the E/C did not present alternatives or otherwise respond to the request until the day of the pretrial stipulation. We concluded that such an attitude "reflects a `do nothing' approach to the request for rehabilitation training, in the face of awareness of appellant's condition, his 25% permanent impairment rating, his restrictions on lifting, and [his physician's] recommendation that he receive rehabilitation." Id. at 969.
In the case at bar the E/C, unlike the E/C in Towne v. Bates File Co., recognized the need for rehabilitative care by providing same. The JCC's order below also reflects a recognition of claimant's need for it, but does not adequately explain why the services being provided were sufficient. In that this determination is not clear, and appears to have overlooked or ignored other evidence in the record, cf. Allied Parcel Delivery v. Dixon, 466 So.2d 439 (Fla. 1st DCA 1985), I would remand the cause as to this issue as well for clarification.
NOTES
[1] While the JCC couched his finding in terms of capability to work, it is apparent from the record that the JCC found that the alleged injury was no longer creating an impairment or physical restriction which would limit the claimant's ability to perform appropriate employment.
[2] Dr. Hunter's testimony revealed that the claimant had failed to reveal a prior back injury which had occurred in 1987. The JCC noted that Dr. Hunter's opinion specifically was based upon subjective complaint of pain by the claimant, and an inaccurate history provided by the claimant.
[3] Dr. McMillan testified that it was possible that a prior 1977 accident could have accounted for the claimant's L5-S1 abnormality.
[4] The JCC also denied the claims for rehabilitation and remedial treatment since the JCC found that the claimant was no longer suffering the effects of the industrial accident.
[5] I recognize that the employer's burden has been lessened by the 1990 amendments to section 440.15(3)(b)(2), providing for the denial of benefits to an employee who failed to conduct a work search for a minimum of five jobs during a biweekly period, if he or she received knowledge of same from a source other than the employer, see Chapter 90-201, section 121, Laws of Florida; nevertheless, there is nothing in the record at bar disclosing that the employee received notice of his obligation to carry out a search from any person, hence the provisions of the amended statute are inapplicable. Even if it could be said that claimant was communicated notice of such duty from a source other than the employer, the period of time for which he seeks compensation benefits  from the date of termination (May 1989) through the date of the hearing (December 11, 1989)  is not controlled by the amendment to section 440.15(3)(b)(2), which became effective as of July 1, 1990, because the amended statute is not applicable to wage-loss claims which accrued before its effective date. Litvin v. St. Lucie County Sheriff's Dep't, 599 So.2d 1353 (Fla. 1st DCA 1991).